**GEORGE A. HORMEL & COMPANY,**
Appellant,

v.

**Gary JORDAN, Appellee.**

No. 96–603.

Supreme Court of Iowa.

Sept. 17, 1997.

Rehearing Denied Oct. 16, 1997.

Stephen W. Spencer and Joseph M. Barron of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, for appellant.

Robert W. Pratt and Max Schott, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

This workers' compensation case involves a laborer who never missed a day of work but over time suffered a cumulative shoulder injury for which he ultimately recovered permanent partial disability benefits for a twenty percent industrial disability. The employer appeals the district court's affirmance of the industrial commissioner's decision, challenging the factual and legal conclusions relating to injury date, notice, statute of limitations, and causation. Finding no error, we affirm.

George A. Hormel & Company (Hormel) hired Gary Jordan in 1984 as a meat processing plant laborer. Jordan worked on the receiving dock where he unloaded semi-trailers filled with boxes of meat weighing sixty to eighty pounds each. He also worked as a "batcher helper" pushing 500–pound carts of meat. This daily routine of heavy lifting and

pushing eventually took its toll on Jordan's right shoulder.

Jordan first visited a company physician on September 15, 1988. He was diagnosed as having a subluxating shoulder.[1] Hormel's report of the incident notes that Jordan sustained a shoulder injury while unloading trucks by grabbing heavy boxes of meat "by the strap with his right arm." While Jordan lost no time from work due to his shoulder injury, he testified that he was constantly stiff and sore. When he raised his arm above shoulder level, it reportedly "clunked" out of alignment, causing excruciating pain. Over the next three years, Jordan saw a series of employer-authorized physicians and therapists, all of whom concurred in the subluxation diagnosis. Various prognoses were made and treatment plans offered; none were effective.

Pertinent to this appeal, Dr. Sinesio Misol examined Jordan's shoulder on October 1, 1991. The orthopedist was the first to rate Jordan's injury, notifying Hormel that "this man has a degree of permanency that I would estimate to be in the area of about 30% of the use of the right upper extremity." Thereafter a licensed physical therapist hired by Hormel rated Jordan's work-related disability as a "24% impairment to the right upper extremity based on the recurrent subluxation and dislocation of the joint."

Relying on the physical therapist's rating, Hormel issued a check to Jordan on January 14, 1992, in the sum of $15,591.60, representing sixty weeks of permanent partial disability benefits. Jordan responded with a request for $4782.41 in interest dating back to September 15, 1988. Hormel contested its liability for interest.

Jordan sought arbitration over the interest dispute. Although his claim for interest cited an injury date of September 15, 1988, his original notice and petition filed with the industrial commissioner alleged an injury

date of October 1, 1991. This was, according to Jordan, the date of his "cumulative injury," that is, the date when evidence of an industrial disability became known to him. Hormel ascribed an ulterior motive to this discrepancy in injury dates. It argued that Jordan selected the later date to avoid the two-year statute of limitations in Iowa Code section 85.26(1) (1993), and that based on the earlier date of injury, the claim was time barred. The parties submitted their injury date dispute to the deputy commissioner.

Following a hearing, a deputy industrial commissioner determined that Jordan suffered a work-related cumulative injury which manifested itself on October 1, 1991, when he first learned that his injury was permanent. The deputy also found that Hormel had actual notice of the injury, and that Jordan's claim had been filed within the two-year statutory period of Iowa Code section 85.23. Weighing impairment ratings from four sources,[2] the deputy calculated Jordan's industrial disability to the body as a whole at twenty percent, which entitled him to 100 weeks of permanent partial disability at $259.86 per week, or a total of $25,986. The deputy gave Hormel credit for the $15,592 already paid, entering judgment for Jordan in the sum of $10,394. As for interest, the deputy determined that it began accruing on October 1, 1991—the onset of permanency.

Hormel appealed to the industrial commissioner who, in final agency action, affirmed in full the deputy's decision. Hormel then petitioned for judicial review. The district court affirmed the industrial commissioner, and this appeal by Hormel followed.

At the heart of Hormel's appeal is its claim that Jordan's injury is neither cumulative nor work-related. Even if it is, Hormel claims, for purposes of fixing the statutory notification periods, the court—and the industrial commissioner before it—erred when it chose

---

1. A physician testifying at Jordan's administrative hearing described "subluxation" of the shoulder as

    the normal relationship of the joint being disrupted. That is the two bones which normally would have a certain defined relationship being taken out of that relationship. Subluxation means partially but not completely dislocated.

2. October 1, 1991, Dr. Misol (30% of upper right extremity); December 23, 1991, physical therapist Bower (24% of upper right extremity); November 6, 1992, Dr. Delwin Quenzer (12% upper right extremity); and November 2, 1993, Dr. Keith Riggins (12% of upper right extremity).

October 1, 1991, instead of September 15, 1988, as the injury date.

## I. Scope of Review.

Iowa Code section 17A.19(8) governs our review of appeals from administrative actions. *Robbennolt v. Snap–On Tools Corp.*, 555 N.W.2d 229, 233 (Iowa 1996). Like the district court, we are authorized to grant relief only if the agency's action is affected by error of law, unsupported by substantial evidence in the record, or characterized by abuse of discretion. *Id.* The industrial commissioner's well-supported factual findings are binding on us, as are the reasonable inferences that may be fairly drawn from disputed evidence in the record. *Christensen v. Snap–On Tools Corp.*, 554 N.W.2d 254, 257 (Iowa 1996).

## II. Cumulative Injury.

We first recognized the concept of cumulative injury resulting from repetitive physical trauma in the workplace in *McKeever Custom Cabinets v. Smith*, 379 N.W.2d 368, 372–74 (Iowa 1985). In *McKeever* we adopted the rule that, in factually appropriate cases, liability exists for disability that gradually develops over a period of time. *McKeever*, 379 N.W.2d at 373 (citing 1B A. Larson, *Workmen's Compensation* § 39.10 (1985)). The employee in *McKeever*, a cabinet maker, quit his job as a result of work-related wrist pain. Although he had suffered two nondisabling injuries, his claim for compensable disability stemmed from years of cumulative trauma to his wrist from hammering and sanding. Because recovery will be barred on any injury not filed within two years of its occurrence, *see* Iowa Code § 85.26(1), the question became: "when did the 'injury' occur for time-limitation purposes?" *Id.* at 374. We ruled that the injury occurs when, "because of pain or physical inability, [the employee] can no longer work." *Id.*

The "missed work" test applied in *McKeever* proved problematic in a later case, *Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824 (Iowa 1992). There an employee suffering a cumulative injury missed no work but suddenly found herself unemployed due to a strike that closed the plant. Citing Larson's treatise on worker's compensation, we found it appropriate in *Tasler* "to fix the date of injury as of the time at which the 'disability manifests itself.' " *Tasler*, 483 N.W.2d at 829 (quoting 1B A. Larson, *Workmen's Compensation* § 39.10 (1991)). We went on to characterize "manifestation" as "the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person." *Id.* (quoting *Belwood Nursing Home v. Industrial Comm'n*, 115 Ill.2d 524, 106 Ill.Dec. 235, 238, 505 N.E.2d 1026, 1029 (1987)). Applying this rule, we concluded Tasler's date of injury coincided with the date she was laid off due to the plant closing. *Id.* at 830.

Our court of appeals applied *Tasler* in considering the date of cumulative injury in *Venenga v. John Deere Component Works*, 498 N.W.2d 422 (Iowa App.1993). Venenga, a materials handler and shavings hauler, suffered back pain from heavy lifting and a fall. His condition eventually rendered him unable to work. *Venenga*, 498 N.W.2d at 423. The district court, affirming the industrial commissioner, determined that Venenga's date of injury corresponded to his first hospitalization for back surgery. *Id.* at 423–24. The court of appeals reversed, holding that under the *Tasler* manifestation test, the date of injury fixed by the commissioner predated the time when the claimant, as a reasonable person, knew not only of the injury but of its impact on his employment. *Id.* at 425. The court reasoned that, because the company had been on strike while Venenga was hospitalized, he had suffered no compensable loss at that time. Only later, when the surgery failed to correct his impairment and Venenga was forced to quit working, did the impact of his injury manifest itself. *Id.* The court reasoned that mere knowledge of an injury, or receipt of medical care, was an insufficient basis on which to establish the date of injury for purposes of a cumulative-injury claim. *Id.*

With these cases in mind, we turn to Hormel's arguments on appeal.

A. *Date of injury.* Hormel contends the court erred in its selection of October 1, 1991 as the injury date because "[Jordan] was quite well aware of the injury and possible work relationship of same as of September 15, 1988." Because this is "an inherently fact-based determination," the agency's findings are entitled to substantial deference. *Tasler,* 483 N.W.2d at 829. The deputy's determination, however, must rest on the proper legal standard—here, the two-part *Tasler* manifestation test: the date on which the claimant, as a reasonable person, would be plainly aware of (1) the injury and (2) the causal relationship between the injury and claimant's employment. *Id.*

■ Substantial record evidence supports the agency's and district court's conclusion that not until October 1, 1991 did Jordan have knowledge of the permanent impairment to his shoulder, nor did he realize the causal impact that injury would have on his job with Hormel. *Venenga,* 498 N.W.2d at 425. There can be no doubt that throughout the three-year period in question, Jordan had difficulty performing the heavy lifting and pushing required by his job. Moreover, he sought treatment during this period from a series of orthopedic specialists and physical therapists. Jordan nonetheless continued performing his assigned duties—and was by all accounts an able, dependable Hormel employee. Having reviewed the numerous medical opinions offered into evidence, we find they support the deputy's conclusions as affirmed by the district court that Jordan first learned from his visit to Dr. Misol on October 1, 1991 that he would not recover from the cumulative injury to his shoulder, and that permanent restrictions on his work activities would be required.

Contrary to Hormel's contentions, the fact that Jordan gained knowledge of his subluxated shoulder on prior medical visits is not dispositive in fixing the date of injury. On this point, we said in *Tasler:*

> We thus reject an interpretation of the term "manifestation" that will always require an employee suffering from a repetitive-trauma injury to fix, as the date of accident, the time at which the employee first became aware of the physical condition, presumably through medical consultation, since by their very nature, repetitive-trauma injuries often will take years to develop to the point where they will constitute a compensable workers' compensation injury.

*Tasler,* 483 N.W.2d at 829–30.

■ We also reject Jordan's invitation to add a third element of "compensability" to the *Tasler* manifestation test. Jordan contends that a workers' compensation injury does not occur until the claimant has received a permanency rating. We disagree. While it may be the fact that in some cases, as here, the claimant learns the extent of a cumulative injury and at the same time receives an impairment rating, such would not always be the case. The "occurrence of the injury" marks day one on the calendar for purposes of requiring notice within ninety days, and filing a claim within two years. *McKeever,* 379 N.W.2d at 375. At this stage, compensability—though a possibility, or even a probability—remains an uncertainty. Whether the injury is, indeed, compensable will be determined at a later stage. *See Miedema v. Dial Corp.,* 551 N.W.2d 309, 311 (Iowa 1996) (for injury to be compensable, claimant must prove by preponderance of the evidence causal connection between condition of employment and injury).

Because the date of injury selected by the agency meets the legal test of *Tasler* and enjoys substantial support in the record, no ground for reversal appears.

B. *Statute of limitations.* Relying on September 15, 1988 as the injury date, Hormel contends that Jordan's claim (filed September 2, 1992) was time barred under Iowa Code section 85.26(1). The statute provides:

> An original proceeding for benefits under this chapter ... shall not be maintained in any contested case unless the proceeding is commenced within two years from the date of the occurrence of the injury for which benefits are claimed or, if weekly compensation benefits are paid under section 86.13, within three years from the date of the last payment of weekly compensation benefits.

Iowa Code § 85.26(1). With the date of cumulative injury fixed by the commissioner at October 1, 1991, however, Jordan's claim falls squarely within the two-year statutory period. Hormel's arguments to the contrary must fail.

■ C. *Notice.* Iowa Code section 85.23 provides that within ninety days of the occurrence of an injury, the employer must either have actual notice or be given notice of the injury; otherwise no compensation shall be allowed. Hormel concedes on appeal that, as the agency found, it had actual notice that Jordan suffered a shoulder injury as early as August 15, 1988. Hormel argues, however, that if Jordan's cumulative injury date is actually October 1, 1991, then it received no notice—actual or otherwise—within the statute's ninety-day time frame. Put another way, Hormel argues it "was held to have known of Claimant's work-related injury more than three years before the injury occurred!"

The agency and district court attempted to explain what Hormel calls this "absurd result" by relying on the concept of delayed discovery of injury applied in *Dillinger v. City of Sioux City,* 368 N.W.2d 176, 181 (Iowa 1985). We agree with Hormel, however, that—unlike *Dillinger*—this is not a "discovery rule" case. As we observed in *McKeever,* the discovery rule and cumulative injury rule are closely related but not the same. *McKeever,* 379 N.W.2d at 372–73.

> The discovery rule may apply where a compensable injury occurs at one time but the employee, acting as a reasonable person, does not recognize its "nature, seriousness and probable compensable character" until later. *Orr v. Lewis Cent. Sch. Dist.,* 298 N.W.2d 256, 257 (Iowa 1980). The cumulative injury rule, however, treated by Professor Larson under the heading "gradual injury," may apply when the disability develops over a period of time; then the compensable injury itself is held to occur at the later time.

*Id.* at 373.

*Dillinger* is distinguishable because the employer there had actual notice of the earlier traumatic injury later manifested under the discovery rule. *Dillinger,* 368 N.W.2d at 181. Jordan's injury, however, was not hidden until discovery; rather, it gradually developed. The deputy and district court were mistaken in their conclusion that actual notice of injury in 1988 necessarily extended to the cumulative injury Jordan first learned of in 1991.

Nevertheless, the record reveals that Hormel indeed had actual notice of the developing injury. Hormel's managers were continually apprised of Jordan's shoulder problem. *Cf. Tasler,* 483 N.W.2d at 827 (claimant's plant records chronicled history of complaints during course of employment). The deputy found that Hormel's plant manager accommodated Jordan by assigning tasks that limited strenuous overhead lifting and pushing of heavy tubs. Also significant to the question of notice of cumulative injury was the deputy's finding that Hormel authorized a series of physicians to examine Jordan's shoulder from 1988 to 1991. In fact, Dr. Misol's October 1 memorandum on which Jordan based his claimed date of injury contained a signed notation that it was mailed to Hormel on November 22, 1991. The deputy further found that, at Hormel's request, physical therapist Bower assessed Jordan's shoulder on December 23, 1991, and gave an impairment rating (within six percentage points of Dr. Misol's rating) which Hormel relied on in paying permanent partial disability benefits. On this same date, Bower mailed Hormel a two-page letter describing in detail Jordan's increasing shoulder difficulty over the course of three years, his less than successful treatment, and the mixed medical opinions from numerous physicians. Clearly these exhibits contradict Hormel's contention that it had no actual notice of Jordan's cumulative injury within ninety days of October 1, 1991.

■ D. *Work-related injury.* The burden rested upon Jordan, of course, to convince the agency by a preponderance of the evidence that his disability is causally related to injuries arising from his employment. *Sanchez v. Blue Bird Midwest,* 554 N.W.2d 283, 285 (Iowa App.1996). Hormel argues on appeal that Jordan failed to meet this standard of proof. According to Hormel, Jordan failed to tell examining physicians about non-

work related activities, such as playing sports and helping out at his brother's farm, that may have contributed to or caused his injury. In sum, Hormel maintains that much of the medical evidence was tainted, or at least rested on incomplete information.

All the insufficiency arguments Hormel now raises were considered in detail by the deputy, who gave them little weight. Such judgment calls are clearly within the agency's domain. *Burns v. Board of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993). Although the many medical opinions considered by the fact finders were not unanimous in their causation conclusions, substantial evidence supports the overall finding that cumulative work-related trauma caused Jordan's shoulder to subluxate, resulting in permanent partial impairment.

### III. *Conclusion.*

Jordan suffered a work-related cumulative injury to his shoulder. He filed his claim for compensation within the statutory period, and Hormel had actual notice of the injury. The district court correctly affirmed the industrial commissioner's finding of permanent partial disability and accompanying award of benefits.

**AFFIRMED.**