Maria A. HERRERA, Appellee,

v.

IBP, INC., Appellant.

No. 99–0836.

Supreme Court of Iowa.

Sept. 6, 2001.

---

* Senior Judge assigned by order pursuant to    Iowa Code section 602.9206 (2001)

James C. Meehan, Dakota City, Nebraksa, for appellant.

Paul J. McAndrew, Jr., Iowa City, for appellee.

Max Schott of Max Schott & Associates, P.C., Des Moines, and Robert S. Kinsey, III, of Brown, Kinsey & Funkhouser, P.L.C., Mason City, for amicus curiae, Iowa Trial Lawyers Association.

TERNUS, Justice.

The dispute in this workers' compensation case centers on whether the industrial commissioner correctly determined that the employee's claim for workers' compensation benefits based on a cumulative trauma injury was time barred. *See* Iowa Code § 85.26 (1995) (requiring that any claim for benefits under chapter 85 be filed within two years of the date of injury). The agency decision was reversed by the district court on judicial review.

On the employer's appeal to our court, we hold that the industrial commissioner's determination that the employee's claim for benefits accrued more than two years prior to the date she filed her petition is not supported by substantial evidence. Therefore, we affirm the decision of the district court and remand for further proceedings.

I. *Background Facts and Proceedings.*

The appellee, Maria Herrera, began working in a hog slaughtering plant owned by the appellant, IBP inc., in March 1988. In September 1990, she experienced pain in her arms and hands. IBP sent her to Dr. Forrest Dean who diagnosed bilateral overuse carpal tunnel syndrome. He ordered conservative treatment and placed Herrera on light duty. Herrera's symptoms gradually decreased and were resolved by December 1990. At that time, Herrera was released to return to work with no restrictions or limitations.

On March 27, 1993, Herrera reported left wrist, bilateral arm and shoulder, and neck discomfort to the company nurse. The nurse massaged these areas and then returned Herrera to her position without restrictions.

Herrera saw Dr. Dean on March 31, 1993. He noted her problems to be overuse of the upper extremities. She was again treated conservatively, seeing Dr. Dean every one to two weeks. After approximately two months of conservative treatment and restricted activity, Herrera began to have some relief from her symptoms. Her condition continued to improve and in January 1994 Dr. Dean ordered physical therapy and decreased her restrictions to permit occasional hand use. By March 1994 Herrera had improved to the point that Dr. Dean determined she could begin job hardening at her old job. Her attempts to do so, however, resulted in an aggravation of her symptoms.

When Herrera saw Dr. Dean in early April 1994, she reported that her discomfort had increased. In mid-May 1994, Dr. Dean reduced Herrera's work hardening routine due to an increase in her upper extremities symptoms. Nonetheless, her

pain increased and her hands began to swell. She was placed back on light duty in June 1994.

Herrera subsequently underwent a battery of tests and was referred to an orthopedist, Dr. Smith. On August 19, 1994, Dr. Smith diagnosed Herrera's condition as "upper extremity overuse type problems." Nonetheless, he concluded that she should be able to perform her regular job.

Herrera once again began job hardening, which involved gradually increasing her hours on the line by one hour a day. This program exacerbated Herrera's symptoms, and she continued to complain to Dr. Dean of increased pain in her upper extremities. In late December 1994 Dr. Dean concluded that Herrera was suffering from chronic pain syndrome and suggested possible job restriction alternatives or a pain clinic referral. A few days later, on January 4, 1995, Herrera was terminated from her job for an allegedly third unexcused absence.

On May 5, 1995, Herrera filed a claim for worker's compensation benefits, alleging an injury to her whole body from repetitive overuse of the arms, legs, and torso.[1] IBP answered, claiming the petition was untimely under section 85.26.

Herrera took the position at the hearing before the deputy industrial commissioner that her injuries occurred on January 4, 1995, the date upon which she was terminated. The deputy adopted this date as the date of injury, determined the amount of industrial disability, and awarded permanent partial disability benefits. Upon appeal to the industrial commissioner, the commissioner held that the date of injury was March 31, 1993, making the petition filed more than two years later time barred. The commissioner reasoned that

March 31, 1993 was the first date that Herrera sought medical treatment, making that the date of injury under *Thilges v. Snap-On Tools*, 528 N.W.2d 614, 618 (Iowa 1995). She also found that the work restrictions placed on Herrera as a result of that doctor visit constituted an impact on employment, meeting the date-of-injury test of *Venenga v. John Deere Component Works*, 498 N.W.2d 422, 425 (Iowa Ct.App. 1993). Finally, the commissioner ruled that as of March 31, 1993 Herrera knew her injury "was both serious and causally related to work," thereby satisfying the date-of-injury test set forth in *Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824, 829 (Iowa 1992). The commissioner's decision made it unnecessary for her to decide whether Herrera was entitled to benefits and, if so, the amount of such benefits.

Herrera filed a petition for judicial review in the district court. The district court ruled that the commissioner's finding as to the date of injury was based upon an improper interpretation of section 85.26 and governing case law and was not supported by substantial evidence. Applying the *Tasler* test, the district court ruled that it was not until Herrera tried to return to her old job in March 1994, but could not successfully do so, that a reasonable person, in her position, would have realized that the injury would have a permanent impact on her employment. The district court held that March 9, 1994 was the date of injury, and Herrera's petition, filed within two years of that date, was timely. The court reversed the industrial commissioner's decision and remanded the case for a determination of Herrera's entitlement to benefits.

## II. *Scope of Review.*

Our review is governed by Iowa Code chapter 17A, Iowa's Administrative Proce-

---

1. Herrera also filed a petition for benefits based on a back injury sustained on October 14, 1992. That claim is not at issue in this appeal.

dure Act. *See Pirelli–Armstrong Tire Co. v. Reynolds,* 562 N.W.2d 433, 436 (Iowa 1997). Section 17A.19 permits a reviewing court to reverse an agency decision when it is "[i]n violation of constitutional or statutory provisions," or when it is "unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole." Iowa Code § 17A.19(8). An appeal of a district court's ruling on judicial review of an agency decision "is limited to determining whether the district court correctly applied the law in exercising its section 17A.19(8) judicial review function." *Ahrendsen ex rel. Ahrendsen v. Iowa Dep't of Human Servs.,* 613 N.W.2d 674, 676 (Iowa 2000). The commissioner's factual findings are binding on us if they are supported by substantial evidence. *See IBP, Inc. v. Harpole,* 621 N.W.2d 410, 414 (Iowa 2001).

### III. *Applicable Legal Principles.*

This court adopted the "cumulative injury rule" in *McKeever Custom Cabinets v. Smith,* 379 N.W.2d 368 (Iowa 1985). We held that when a disability develops over a period of time, the compensable injury is held to occur when the employee, "because of pain or physical inability," can no longer work. *McKeever,* 379 N.W.2d at 374. The date such an injury occurs is important because it impacts the determination of "which employer and carrier is at risk, whether notice of injury and claim are within the statutory period, whether statutory amendments were in effect, which wage basis applies, and other important considerations." *Thilges,* 528 N.W.2d at 618. Although the date of injury is relevant to notice and statute-of-limitations issues, the cumulative injury rule is not to be applied in lieu of the discovery rule. *See McKeever,* 379 N.W.2d at 372–73. As we said in *McKeever,* although "[t]hese two rules are closely related, . . . they are not the same." *Id.* Thus, although an inju-

ry may have occurred, the statute of limitations period does not commence until the employee, acting as a reasonable person, recognizes its "nature, seriousness and probable compensable character." *Orr v. Lewis Cent. Sch. Dist.,* 298 N.W.2d 256, 257 (Iowa 1980) (applying discovery rule to workers' compensation actions).

The *McKeever* "missed-work" test was later refined in *Tasler,* where we endorsed an analysis of more general applicability. In *Tasler,* we adopted the manifestation test, fixing the date of injury "as of the time at which the 'disability manifests itself.'" 483 N.W.2d at 829 (quoting 1B Arthur Larson, *Workers' Compensation Law* § 39.10 (1991)). We held that an injury manifests itself when both " 'the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person.'" *Id.* (quoting *Peoria County Belwood Nursing Home v. Indus. Comm'n,* 115 Ill.2d 524, 106 Ill.Dec. 235, 238, 505 N.E.2d 1026, 1029 (1987)).

This court had the opportunity to apply the manifestation test in the case of *George A. Hormel & Co. v. Jordan,* 569 N.W.2d 148 (Iowa 1997). In that case we declined to add a third element—compensability—to the test. *Jordan,* 569 N.W.2d at 152. We also held that a permanency rating is not a prerequisite for meeting the manifestation test. *Id.* Nonetheless, in upholding the agency's date-of-injury finding, we noted that on the date chosen by the agency—October 1, 1991—the employee had "knowledge of the *permanent* impairment to his shoulder" and realized "the causal *impact* that injury would have on his job." *Id.* (emphasis added); *accord Venenga,* 498 N.W.2d at 425 (stating, "more is required than knowledge of an injury or receipt of medical care. The employee must realize his or her injury will have an impact on employment."). We

also observed that it was not until this date that the employee learned "that he *would not recover* from the cumulative injury to his shoulder, and that *permanent* restrictions on his work activities would be required." *Jordan*, 569 N.W.2d at 152 (emphasis added).

Although we accurately stated in *Jordan* that the cumulative injury rule/manifestation test has only two elements—knowledge of injury and its causal relationship to employment, our discussion addressed essentials of the discovery rule—impact on employment and permanency. We take this opportunity to reaffirm what we said in *McKeever*, that these tests, while related, are distinct. The preferred analysis is to first determine the date the injury is deemed to have occurred under the *Tasler* test, and then to examine whether the statutory period commenced on that date or whether it commenced upon a later date based upon application of the discovery rule.

To summarize, a cumulative injury is manifested when the claimant, as a reasonable person, would be plainly aware (1) that he or she suffers from a condition or injury, and (2) that this condition or injury was caused by the claimant's employment. Upon the occurrence of these two circumstances, the injury is deemed to have occurred. Nonetheless, by virtue of the discovery rule, the statute of limitations will not begin to run until the employee also knows that the physical condition is serious enough to have a permanent adverse impact on the claimant's employment or employability, i.e., the claimant knows or should know the "nature, seriousness, and probable compensable character" of his injury or condition. *Orr*, 298 N.W.2d at 257. We turn now to an application of these principles to the facts of this case.

## IV. Discussion.

**A. Cumulative injury rule.** Application of this rule requires a determination of when Herrera knew that she suffered from a condition or injury and that it was caused by her employment. The industrial commissioner found that these requirements were satisfied on March 31, 1993, when Herrera saw Dr. Dean, complaining of pain in her left wrist, both arms, her shoulders, and her neck. Herrera testified at the hearing that Dr. Dean told her at this visit that she again had an overuse syndrome caused by her work. Based on this testimony, we think there is substantial evidence in the record to support the industrial commissioner's finding that Herrera knew on March 31, 1993, that she was suffering from a cumulative injury and that it was work related. Therefore, the industrial commissioner correctly held that March 31, 1993 was the date of injury for purposes of the cumulative injury rule.

**B. Discovery rule.** We turn now to an examination of the commissioner's ruling that the statute of limitations began to run on the date Herrera's cumulative trauma injury occurred. For purposes of applying the statute of limitations in this case, it is not necessary to determine the exact date upon which Herrera "discovered" her injury. Instead, we need only decide whether there is substantial evidence to support a finding that she knew the nature, seriousness and probable compensable character of her injury within two years of the date she filed her petition for benefits—May 5, 1995.

As we have established, Herrera's cumulative trauma injury occurred on March 31, 1993. The industrial commissioner found that on this date Herrera knew her injury was serious because work restrictions were imposed. We find nothing in the record, however, that would support a conclusion that a reasonable person in Herrera's posi-

tion would have been aware of the seriousness of her condition and its impact on her employment at that time.

It is important to recall that Herrera had a prior history of similar problems that had resolved with conservative treatment within four months. The district court correctly observed that "[w]hen the [employee] presented on March 31, 1993 with similar pain, a reasonable person would expect that after treatment and light duty, the problems would again resolve, with little or no impact on her employment." This conclusion is supported by the medical records, which reveal that Herrera did indeed make slow but steady progress so that by January 1994 her condition had improved to the point that she began work hardening. Moreover, during this period, Dr. Dean did not feel that she had any permanent injury.

We conclude that there is not substantial evidence in the record to support the commissioner's finding that the statute of limitations began to run on March 31, 1993. As we have previously stated, we do not find it necessary to identify the exact date that Herrera knew the seriousness of her condition. It is sufficient for purposes of the issue before us to state that the record does not support a finding that Herrera knew or should have known this fact before May 5, 1993. Consequently, the record would only support a finding that Herrera discovered her injury sometime after this date, thereby rendering her petition, filed two years later, timely.

### V. *Conclusion and Disposition.*

A cumulative injury occurs when a reasonable employee would plainly be aware that he or she suffers from a condition or injury causally related to his or her employment. Under this test, we conclude

there is substantial evidence to support the commissioner's finding that this awareness occurred on March 31, 1993, when Herrera saw Dr. Dean and was told she had a repetitive use condition caused by her work.

Notwithstanding our conclusion that the commissioner correctly determined that Herrera's cumulative injury occurred more than two years before she filed her petition for benefits on May 5, 1995, we reverse the commissioner's ruling that Herrera's claim for benefits was untimely. There is not substantial evidence in the record to support a finding that Herrera knew or should have known before May 5, 1993 that her injury was serious. Therefore, Herrera discovered her injury within two years of filing her petition, thereby satisfying the two-year statute of limitations imposed by section 85.26.

We affirm the district court's reversal of the commissioner's dismissal of Herrera's petition. We remand for further proceedings consistent with this opinion.

### AFFIRMED AND REMANDED.

All justices concur except NEUMAN, J., who concurs in result only. SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

---

* Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (2001).