# IN THE SUPREME COURT OF IOWA

No. 82 / 06–1377

Filed August 15, 2008

**MIDWEST AMBULANCE SERVICE** and
**COMBINED SPECIALTY INSURANCE,**
f/k/a/ **VIRGINIA SURETY COMPANY, INC.,**

    Appellants,

vs.

**JODI RUUD,**

    Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Leo Oxberger, Senior Judge.

Employer and insurance carrier seek further review of award of workers' compensation benefits. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Steven M. Nadel of Ahlers & Cooney, P.C., Des Moines, for appellants.

Mindi M. Vervaecke of Fitzsimmons & Vervaecke Law Firm, P.L.C., Mason City, for appellee.

**APPEL**, **Justice**.

This case involves an appeal of a decision of the district court affirming an award of workers' compensation benefits to a former employee. The employer claims that the workers' compensation commissioner erroneously determined that the claim was timely, that the employer was not entitled to credit for medical expenses paid through COBRA, and that the employer was required to repay medical benefits paid by the employee's private insurer. After a divided court of appeals sitting en banc affirmed the judgment of the district court, we granted further review. We now affirm.

## I. Factual and Procedural Background.

Jodi Ruud is a certified emergency medical technician who began working for Midwest Ambulance Service (Midwest) in Des Moines in 1998. On May 12, 2000, Ruud dislocated her left shoulder while spraying the inside of ambulance walls with disinfectant and wiping them down. With the assistance of a co-worker, Ruud was able to relocate the shoulder.

Ruud filed an accident report the day of the incident and was sent by Midwest to Dr. David Berg for medical treatment. Berg diagnosed a left shoulder dislocation, returned Ruud to work immediately without restriction, and referred her to physical therapy. No further treatment was recommended by Berg. In his notes, however, Berg observed that Ruud's shoulder will "dislocate again!"

Ruud attended one physical therapy session. According to Ruud, the physical therapist told her that she "may" need surgery or "eventually" would need surgery sometime in the future.

Ruud's shoulder injury did not cause her to miss work and did not greatly affect her physical mobility. Her shoulder did, however, continue

to dislocate over the next several months when Ruud was performing mundane tasks. When these dislocations occurred she was able to relocate her shoulder on her own and did not seek further medical treatment. Ruud testified that she did not seek medical treatment because her shoulder injury did not affect her daily work, she was uncertain as to who would be financially responsible for treatment, and she was in denial over fear that surgery might ruin her career.

On June 16, 2002, Ruud reinjured and dislocated her shoulder while diving at an off-duty social event. The reinjured shoulder now, for the first time, prevented her from returning to work. On June 20, Ruud made a request in writing to Midwest for shoulder treatment.

On July 11, Ruud reported to Midwest that she experienced left shoulder pain and strain after lifting a patient who was lying on a cot. Midwest sent her to see Dr. Virginia Geary. Geary refused to provide treatment, stating that Ruud's employer was denying workers' compensation liability because the injury was not work-related and that, in any event, more than two years had elapsed since the initial work injury of May 12, 2000. Geary, however, excused Ruud from work pending further treatment. Geary further advised Ruud to see an orthopedist using her private medical insurance.

Ruud was unable to return to work after July 2002. She exercised her COBRA benefits in order to continue her health insurance coverage under Midwest's group medical plan. During the period of COBRA coverage, Ruud paid the required premiums personally and in full. On September 25, 2002, Ruud had arthroscopic surgery to repair the tear and reconstruct her left shoulder. Ruud was subsequently placed on restricted duty and provided physical therapy.

Ruud filed a workers' compensation claim on September 10, 2003 against Midwest and Midwest's workers' compensation insurer, Combined Specialty Insurance (Combined). The deputy workers' compensation commissioner determined that Ruud's claim was time barred. According to the deputy, Iowa Code section 85.23 (2003) requires a claimant to give notice of the occurrence of an injury to the employer within ninety days of the date of the occurrence. The deputy recognized that the time period for giving notice does not begin to run until the claimant knows or should have known the nature, seriousness, and probable compensable character of the injury. The deputy found, however, that a reasonable person in Ruud's position should have been aware of the seriousness of her injury as of May 12, 2000. Because Ruud did not inform her employer of the injury within the statutory period, her claim was barred.

On intra-agency appeal, the commissioner reversed the decision. The commissioner found that at the time of Dr. Berg's examination, "it was reasonable for claimant to be optimistic about the condition and to not consider it to be serious even though she realized it had the potential to become serious at some undetermined time in the future." The commissioner determined that it was not until June 2002 that Ruud was placed on notice of the severity of her injury. As a result, the commissioner held that Ruud's September 10, 2003 petition was brought within two years of the date at which Ruud knew or should have known of the seriousness of the injury.

In light of his holding that Ruud's claim was not time barred, the commissioner considered the remaining issues presented in the case. With respect to the issue of whether the employer was entitled to a credit against benefits owed for payments made by Ruud's health insurance,

the commissioner determined that because Ruud herself paid the premiums for the COBRA benefits, the employer was not entitled to a credit. The commissioner further concluded that amounts paid by Ruud's private insurance were attributable to her as if she had made the payments directly. Ruud was thus entitled to reimbursement for those payments.

Midwest and Combined appealed the commissioner's decision to the district court. On appeal, the district court affirmed the commissioner on the statute of limitations issue. The district court held that the question of whether a worker knew or should have known of the seriousness of an injury is a question of fact to be determined in the first instance by the commissioner. The district court held that the finding of the agency that Ruud did not or should not have known of the seriousness of the injury was supported by substantial evidence.

The district court also affirmed the commissioner's determination that the employer was not entitled to a credit for COBRA benefits paid by Ruud's group health insurer. The district court did not rule on the issue of reimbursement for private insurance payments and declined the motion of Midwest and Combined to expand its findings and conclusions with respect to that issue.

Midwest and Combined appealed and the case was transferred to the court of appeals, which considered the case en banc. A six-member majority affirmed the district court's holdings on the statute of limitations issue, the credit issue, and the private insurance issue. Three members of the court of appeals dissented, asserting that Ruud's claim was time barred by the applicable statute of limitations.

We granted further review. On further review, we affirm the decision of the court of appeals.

## II. Standard of Review.

Iowa Code chapter 17A governs judicial review of decisions of the workers' compensation commissioner. Iowa Code § 86.26. Factual findings of the commissioner are reversed only if they are not supported by substantial evidence. *Id.* § 17A.19(10)(*f*). Application of workers' compensation laws to facts as found by the commissioner is clearly vested in the commissioner. *Mycogen Seeds v. Sands,* 686 N.W.2d 457, 465 (Iowa 2004). As a result, we may reverse the commissioner's application of the law to the facts only if it is "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(*m*); *Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 330 (Iowa 2005). Finally, interpretation of workers' compensation statutes and related case law has not been clearly vested within the discretion of the agency, so this court is free to substitute its judgment de novo for the agency's interpretation of law. *Id.*

## III. Discussion.

**A. Statute of Limitations Issue.** The threshold issue in this case is whether Ruud's petition was timely under Iowa Code section 85.26. In determining whether the statute of limitations began to run, the commissioner used the correct legal standard, namely, whether Ruud acting as a reasonable person knew or should have known that her physical condition was serious enough "to have a permanent adverse impact on the claimant's employment or employability. . . ." *Herrera v. IBP, Inc.*, 633 N.W.2d 284, 288 (Iowa 2001) (citing *Orr v. Lewis Cent. Sch. Dist.*, 298 N.W.2d 256, 257 (Iowa 1980)). As a result, the provisions of Iowa Code section 17A.19(10)(*c*), which vest authority in this court to reverse an agency determination based upon an erroneous interpretation of law not vested in the agency's discretion, has no application.

Instead, this court can reverse the decision only if the commissioner's factual determinations are not supported by substantial evidence as provided in Iowa Code section 17A.19(10)(*f*) or upon a showing that the commissioner's application of law to the facts of this case meets the demanding "irrational, illogical, or wholly unjustifiable" standard of section 17A.19(10)(*m*). *See generally Clark v. Vicorp Rests., Inc.*, 696 N.W.2d 596, 603–04 (Iowa 2005).

We turn first to the findings of the commissioner regarding whether Ruud knew or should have known of the nature, seriousness, and probable compensability of her claim. Based upon his review of the record in this case, the commissioner found that Ruud did not miss work or incur any expenses related to her shoulder injury until June or July 2002. The commissioner noted that her failure to realize that her injury was serious was reasonable in light of Dr. Berg having immediately released her to return to work without restrictions and without recommending further care other than a brief amount of physical therapy. The commissioner found that Ruud was not and could not have been aware as a reasonable person, of the probable nature, seriousness, and compensable character of her injury until June 2002, when her injury became sufficiently serious to force her to miss work and undergo surgical repair of her shoulder. The question of whether a claimant knew, or should have known, of the nature, seriousness, and probable compensability of her injury is a question of fact to be determined by the commissioner. *Gates v. John Deere Ottumwa Works,* 587 N.W.2d 471, 475 (Iowa 1998); *Dillinger v. City of Sioux City*, 368 N.W.2d 176, 182 (Iowa 1985).

As suggested by Midwest and Combined, there was evidence in the record which could have been marshaled to support a contrary

determination. Shortly after her original injury, a physical therapist suggested that surgery "might" or "eventually would" be required. In the months following her original injury, Ruud experienced repeated shoulder separations with some soreness. There was also evidence in the record that Ruud was concerned that her injury could eventually cause her work-related problems.

Mere recognition that there is substantial contrary evidence in the record does not mean that the commissioner's determination may be successfully attacked on appeal. The burden on the party who was unsuccessful before the commissioner is not satisfied by a showing that the decision was debatable, or even that a preponderance of evidence supports a contrary view. The burden is on the unsuccessful party to show that the commissioner's determination is lacking in substantial evidence. *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006).

Like the majority of the court of appeals, we simply cannot reach that conclusion in light of the evidence when reviewed as a whole. Dr. Berg allowed Ruud to go back to work the day of her initial injury without restriction and prescribed only a minimal amount of physical therapy as part of a conservative treatment plan. Until June 2002, Ruud was able to work without restrictions. Until the diving incident in 2002, Ruud's shoulder problem was more of a nuisance than anything else. There was sufficient evidence in the record from which the commissioner could conclude that Ruud was not and should not have been aware that her condition was serious enough "to have a permanent adverse impact on the claimant's employment or employability . . ." until after that time. *Herrera*, 633 N.W.2d at 288.

Given this evidence in the record, Midwest and Combined in effect invite us to engage in a "scrutinizing analysis" of the commissioner's

finding, an approach which we have expressly disavowed. *Terwilliger v. Snap-On Tools Corp.*, 529 N.W.2d 267, 272 (Iowa 1995). Such "scrutinizing analysis" would tend to undercut the overarching goal of the workers' compensation system, " 'for, if we trench in the slightest degree upon the prerogatives of the commission, one encroachment will breed another, until finally simplicity will give way to complexity, and informality to technicality.' " *Zomer v. West River Farms, Inc.*, 666 N.W.2d 130, 133 (Iowa 2003) (quoting *Flint v. City of Eldon*, 191 Iowa 845, 847, 183 N.W. 344, 345 (1921)).

Given the binding findings of the commissioner, we next consider the question of whether the application of law to these facts was "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(*m*). We cannot conclude that the commissioner's application was any of the above. The commissioner determined that Ruud was not aware, and should not have been aware, of the nature, seriousness, and probable compensability of her injury until June 2002. Given this factual finding, we conclude that under Iowa Code section 85.26, the statute of limitations did not begin to run until June 2002. Because her petition was filed within two years of June 2002, the commissioner's conclusion that it was timely was correct.

**B. Credit for Payment of Medical Expenses.** The district court affirmed a holding by the commissioner that Midwest and Combined were not entitled to a credit for the payment of medical expenses made by Ruud's group health insurance carrier. The issue arises because a portion of Ruud's medical expenses were paid during a period when Ruud had exercised her COBRA rights.

Iowa Code section 85.38(2) relates to the issue of employer credits when payments are made by a group health plan. This provision provides, in relevant part:

> In the event the employee with a disability shall receive *any benefits*, including medical, surgical, or hospital benefits, *under any group plan* covering nonoccupational disability *contributed to wholly or partially by the employer* . . . then *the amounts so paid to the employee from the group plan shall be credited to or against any compensation payments.* . . .

Iowa Code § 85.38(2) (emphasis added).

Midwest and Combined argue that as long as Midwest contributed to "any group plan," it is entitled to a credit under this statutory provision. Midwest and Combined assert that under the literal language of the statute, it is irrelevant that Ruud paid the premiums for the continuation of her group health insurance coverage as long as the employer was contributing in some fashion to the underlying group plan. Since the employer continued to contribute to the group plan for employees other than Ruud, Midwest and Combined argue that the statutory requirement for crediting any group plan payments against workers' compensation benefits has been met.

Ruud counters that Midwest and Combined's interpretation of Iowa Code section 85.38(2) is contrary to legislative intent. Ruud argues that the legislature did not intend an employer to receive credit under Iowa Code section 85.38(2) when the employer is not contributing to the premiums of the claimant.

We agree with Ruud. The obvious purpose of Iowa Code section 85.38(2) is to avoid duplication of payments by an employer to an employee. It would be odd, moreover, for an employer to be entitled to a credit against a workers' compensation award to employee A because the

employer made contributions for group health insurance for employees B, C, and D, but not A.

While the ambiguous statutory language is not a model of clarity, the statutory purpose of workers' compensation would not be advanced by the illogical approach advocated by Midwest and Combined. *State v. Ross*, 729 N.W.2d 806, 810 (Iowa 2007). We therefore hold that under Iowa Code section 85.38(2), the employer must contribute in whole or in part to a group insurance plan for the benefit of the claimant in order to be entitled to the statutory credit. Because Midwest and Combined have not proven that they contributed to Ruud's COBRA payments, they cannot prevail on their claim under section 85.38(2).

**C. Direct Payments to Ruud.** The final issue for us to consider is whether the commissioner erred in ordering Midwest and Combined, pursuant to Iowa Code section 85.27, to reimburse Ruud directly for any medical payments made by insurance plans to which Midwest did not contribute. Section 85.27(1) provides that the employer shall furnish reasonable medical services and supplies for injuries compensable under workers' compensation.

Midwest and Combined argue that under *Rethamel v. Havey*, 715 N.W.2d 263 (Iowa 2006), Ruud must prove that she paid the medical expenses herself in order to receive reimbursement. In *Rethamel*, we stated that a claimant must make "a specific showing that the claimant himself *paid* the medical expenses." *Rethamel*, 715 N.W.2d at 267 (emphasis added). While Ruud concedes that she and her husband did not directly pay the medical bills from their own funds, they argue that they essentially paid for the medical bills by purchasing private insurance coverage.

The *Rethamel* case relied upon our previous decision in *Krohn v. State*, 420 N.W.2d 463 (Iowa 1988). In *Krohn,* we held that a workers' compensation claimant was not entitled to be paid sums for medical and hospital expenses absent a showing that the worker personally paid the medical suppliers. *Krohn,* 420 N.W.2d at 464–65. As a result, the employer was entitled to make an arrangement for providing medical and hospital benefits through a group nonoccupational medical and insurance plan, instead of making direct repayments. *Id.* at 465.

We find that *Rethamel* and *Krohn* are not dispositive of the issue in this case. Language in *Rethamel* and *Krohn* suggests that there must be a specific showing that claimant paid the medical expenses directly in order to be entitled to be paid for these expenses. While it may be true that the commissioner's decision in *Rethamel* states that the claimant did obtain medical and health insurance at her or her husband's expense, neither our decision in *Rethamel* or in *Krohn* specifically addressed the issue presented in this case, namely, whether the payment of insurance premiums not provided by the employer amounts to personally paying for the underlying medical benefits.

The commissioner concluded that amounts paid by private insurance are attributable to the plaintiff as if she made those payments herself. The commissioner reasoned that other health insurance plans may have subrogation rights against an insured who receives benefits under workers' compensation. In order to avoid a situation where a health insurance company sought reimbursement from the claimant for expenses that the employer has not paid, the commissioner held that the employer must pay to the claimant an amount equal to the medical benefits that were covered by the insurer.

We believe that the commissioner has adopted the most sensible approach to this unusual issue. *Doe v. Ray*, 251 N.W.2d 496, 504 (Iowa 1977) ("In construing a statute we attempt to give it a sensible, practical, workable and logical construction."). We note that under Iowa Code section 85.38(2), an employer who wholly or partially provides insurance under a group plan is entitled to a credit not simply of the premiums paid, but of the full amount of benefits paid by the group plan for injuries covered by workers' compensation. In light of this statutory provision, the reverse should also be true, namely, that an employee who pays group health insurance premiums has, in effect, paid for medical expenses covered by the group plan. *See State v. Gonzalez*, 718 N.W.2d 304, 308 (Iowa 2006) ("The interpretation of a statute requires an assessment of the statute in its entirety, not just isolated words or phrases."). We therefore hold that the commissioner did not err in ordering direct payment to the claimant for past medical expenses paid through insurance coverage obtained by the claimant independent of any employer contribution.

## IV. Conclusion.

The district court's holding that Ruud's claim is not time barred and that Midwest and Combined are not entitled to a credit for payments made by Ruud's CORBA insurance is affirmed. In addition, we hold that the commissioner properly determined that Ruud is entitled to direct payment of funds from Midwest and Combined to cover the cost of medical expenses paid for by other insurance.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Baker, J., who takes no part.