## IN THE COURT OF APPEALS OF IOWA

No. 14-2078
Filed August 19, 2015

**MENARD, INC. and PRAETORIAN INSURANCE COMPANY,**
    Petitioners-Appellants,

**vs.**

**DALE SIMMER,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Richard G. Blane II, Judge.

Menard, Inc. and Praetorian Insurance Company appeal the district court's ruling affirming the workers' compensation commissioner's award of benefits to Menard's former employee Dale Simmer.  **AFFIRMED.**

Charles A. Blades and Gregory M. Taylor of Scheldrup Blades Schrock Smith, P.C., Cedar Rapids, for appellants.

Janet T. Fitzsimmons of Fitzsimmons & Vervaecke Law Firm, P.L.C., Mason City, for appellee.

Considered by Potterfield, P.J., Mullins, J., and Eisenhauer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**POTTERFIELD, P.J.**

Menard, Inc. ("Menards") and Praetorian Insurance Company appeal the district court's ruling affirming the workers' compensation commissioner's award of benefits to Menards's former employee Dale Simmer.

## I. Factual and Procedural Background

In July 2003, Menards employed Simmer as a sales clerk and promoted him to assistant manager and then to manager of his department. In his positions at Menards, Simmer was often required to carry goods throughout the store and to customers' cars in the parking lot. He carried appliances, rolls of carpet, buckets of paint, and other items. These loads sometimes reached up to three hundred pounds.

In late 2008 and early 2009, Simmer began to experience pain in his feet that spread up into his thighs while working. He worked with his personal physician, Dr. Riesen, to manage the pain through various treatments. He continued to work without restrictions. Dr. Riesen's notes indicate he knew Simmer suffered from scoliosis, but Simmer asserted Dr. Riesen never informed his of the condition. By April 2010, Simmer's pain had spread to his lower back, and he asked Dr. Riesen to help him find a more permanent solution. Dr. Riesen referred Simmer to the Minnesota Back Institute.

Simmer entered the care of Dr. Mehbod at the Minnesota Back Institute in May 2010. Simmer indicated he expected his treatment would allow him to return to his usual job. He learned for the first time that he had scoliosis. Following consultation, Dr. Mehbod recommended an epidural injection and physical therapy, leaving more drastic options such as surgery to be considered

at a later date if the initial treatments were not successful. Simmer returned to his position at Menards without restrictions. He received two epidural injections and participated in physical therapy. These treatments were successful and allowed Simmer to perform his job duties as normal.

By early 2012, Simmer's pain had returned and intensified. On February 9, 2012, Dr. Mehbod explained that Simmer's employment may have had a causal connection to Simmer's worsening condition. Dr. Mehbod advised Simmer to undergo surgery. Though Dr. Mehbod estimated Simmer's recovery would take at least six months, both Simmer and his manager believed that Simmer would return to his normal work following his recovery period. Because Simmer's time away from work would be unpaid, he applied for social security disability benefits to support him until he could return to work. His application was denied. Simmer's surgery was performed on March 7, 2012.

On May 21, 2012, Simmer returned to Dr. Mehbod for a follow-up appointment. Because he had no form of income during his recovery period, he felt pressure to return to work as soon as possible. Dr. Mehbod cleared Simmer to return to work with restrictions on June 4, 2012. Simmer went to work on June 4, but after one hour he experienced intense pain and was unable to continue working. June 4 was Simmer's last day working at Menards. He filed a petition for workers' compensation benefits on June 27, 2012.

A hearing on the petition took place on May 15, 2013. The parties presented as evidence several doctors' opinions as to the cause of Simmer's injuries and whether the injury was work-related.

Dr. Mehbod wrote, "[W]orking 12 or more hours per day in the paint department at Menards standing and walking on concrete with heavy lifting aggravated, accelerated or [sped] up the degenerative process in [Simmer's] back."

Simmer began to see Dr. Mendoza, associate professor of orthopedic surgery at the University of Iowa, once he could no longer afford Dr. Mehbod's care. Dr. Mendoza wrote, "Mr. Simmer's condition of degenerative scoliosis is an osteoarthritic condition caused by wear and tear and occurs regardless of the type of occupation." Dr. Mendoza did not opine as to whether the condition was accelerated by Simmer's work at Menards specifically.

In preparation for the workers' compensation hearing, each party had Simmer evaluated by another doctor. Simmer's counsel retained Dr. Miller, who wrote, "[Simmer's] work was a significant aggravating factor for the pre-existing condition of lumbar scoliosis with degenerative change making the back pain progressive symptomatic."

Menards's counsel retained Dr. Boarini, who wrote, "There is no indication that work was a specific aggravating factor for the progress of his degenerative disease . . . . Certainly long days and heavy lifting can cause . . . pain at the time, but that is a temporary aggravation and does not cause substantial progression in the problem itself." Menards also presented a report by Dr. Mooney. Dr. Mooney did not examine Simmer—his report was based only on a review of the medical records. He wrote, "[Simmer] had a progressive degenerative spinal condition, almost undoubtedly preexisting his adult years, which has progressed resulting in spinal surgery . . . . However, . . . there is no

direct evidence that his work . . . at Menards has been a direct contributor or a material aggravator of this idiopathic medical condition."

The deputy commissioner who heard the case determined Simmer had provided Menards with the requisite notice within ninety days of reasonably recognizing the serious and compensable character of his injury. *See* Iowa Code § 85.23 (2011); *Dillinger v. Sioux City*, 368 N.W.2d 176, 179–81 (Iowa 1985). The deputy found Simmer reasonably would have become aware of the serious and compensable nature of his injury on June 4, 2012, the last day he worked at Menards, and found notice was provided to Menards on June 24, 2012, when Simmer filed his petition for benefits. The deputy further found Simmer's injury was a "cumulative injury arising out of and in the course of his employment," which entitled Simmer to benefits. Menards appealed to the workers' compensation commissioner, who affirmed the deputy's order. Menards then filed for judicial review, and the district court affirmed the commissioner. Menards now appeals.

## II. Standard and Scope of Review

> Iowa Code chapter 17A governs our review of the commissioner's decision. The district court acts in an appellate capacity when reviewing the commissioner's decisions to correct errors of law. On appeal, we apply the standards of chapter 17A to determine whether we reach the same conclusions as the district court. If we reach the same conclusions, we affirm; otherwise we may reverse.

*Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888–89 (Iowa 2014) (citations and internal quotation marks omitted). "We are bound by the commissioner's factual determinations if they are supported by 'substantial evidence in the record before the court when that record is viewed as a whole.'" *Id.* at 889 (quoting Iowa Code

§ 17A.19 (10)(f)). Substantial evidence is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). "Evidence is not insubstantial merely because different conclusions may be drawn from the evidence." *Mike Brooks*, 845 N.W.2d at 889. "On appeal, our task is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made." *Id.* (citation and internal quotation marks omitted).

"Medical causation is a question of fact vested in the commissioner's discretion." *Id.* The question of when an employee acting as a reasonable person would recognize the nature, seriousness, and probable compensable characteristic of an injury is an issue of fact. *See Dillinger*, 368 N.W.2d at 182.[1]

### III. Discussion

Menards raises two issues for our review.[2] First, Menards asserts there is not substantial evidence to support the commissioner's finding that Simmer provided timely notice of the injury to his employer. Second, Menards claims

---

[1] We decline Menards's invitation to depart from this standard. Menards characterizes the issue as an "application of fact to law" rather than an issue of fact, which would require us to give the agency's determination less deference. *See Larson Mfg. Co., Inc. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009). However, Menards fails to cite any authority directing us to treat the issue of the discovery rule as anything other than an issue of fact.

[2] In addition to the two issues presented for our review, Menards mentions a third issue regarding the district court's ruling on Simmer's application for entry of judgment. Menards asserts its third claim on appeal is now moot and it therefore presents no argument on the matter. We do not consider the district court's ruling on the application for entry of judgment.

there is not substantial evidence to support the commissioner's finding that Simmer's injury arose out of and in the course of his employment.

### A. Timely Notice

Iowa Code section 85.23 provides:

> Unless the employer . . . shall have actual knowledge of the occurrence of an injury received within ninety days from the date of the occurrence of the injury, or unless the employee or someone on the employee's behalf . . . shall give notice thereof to the employer within ninety days from the date of the occurrence of the injury, no compensation shall be allowed.

The question before us is whether substantial evidence supports the commissioner's finding that the ninety-day period began on June 4, 2012.

In this case, the injury did not occur on a single date, but developed over a period of time—a cumulative injury. *See Herrera v. IBO, Inc.*, 633 N.W.2d 284, 287 (Iowa 2001). The date of the occurrence of such an injury is deemed to be the date the injury is manifested. *See id.* at 288. "[A] cumulative injury is manifested when the claimant, as a reasonable person, would be plainly aware (1) that he or she suffers from a condition or injury, and (2) that this condition or injury was caused by the claimant's employment." *Id.* The commissioner found Simmer had notice that his condition was caused by his employment on February 9, 2012, when his doctor told him his work might be an aggravating factor.

However,

> by virtue of the discovery rule, the [ninety-day notice period[3]] will not begin to run until the employee also knows that the physical condition is serious enough to have a permanent adverse impact on the claimant's employment or employability, i.e., the claimant

---

[3] While the *Herrera* court discussed the discovery rule in the context of a statute-of-limitations analysis, "[t]his rule is applicable to the notice of claim provision in section 85.23" as well. *Orr v. Lewis Central Sch. Dist.*, 298 N.W.2d 256, 257 (Iowa 1980).

knows or should know the nature, seriousness, and probable compensable character of his injury or condition.

*Id.* (citation and internal quotation marks omitted). When the employee has sufficient information to alert a reasonable person of the need to investigate, he has imputed knowledge of all the facts that would have been disclosed by a reasonable investigation. *See Swartzendruber v. Schimmel*, 813 N.W.2d 646, 650 (Iowa 2000). By virtue of the discovery rule, the commissioner found Simmer reasonably discovered his injury was serious enough to have a permanent adverse impact on his employment on June 4, 2012, when he was unable to work for more than an hour after his doctor had cleared him to return to work following his surgery.

Menards contests that finding on two bases.[4] First, it argues Simmer's failure to discover the seriousness of his injury until June 4, 2012, was unreasonable. It asserts the commissioner and district court used the wrong legal standard by evaluating Simmer's subjective belief prior to June 4 that his injury and surgery would not have a permanent adverse impact on his employment. We disagree with Menards. The commissioner and district court applied the proper standard and concluded—as do we—that the medical advice Simmer received from Dr. Mehbod indicated Simmer would have a lengthy recovery period but did not foreclose him from eventually returning to his job in a

---

[4] Menards briefly argues a third basis: Simmer's social security disability application indicates he had pre-existing knowledge of the seriousness of his injury. We do not agree. The record indicates he expected to receive benefits only until he returned to work, so Simmer's application clearly does not indicate he knew he would be unable to do so. Simmer further argues in his appellate brief that the doctrine of judicial estoppel does not establish such knowledge, but this argument is not responsive to the claims on appeal. Menards raised a judicial estoppel argument before the district court but does not reassert that claim here. We therefore do not consider it.

comparable capacity. A reasonable person in receipt of such advice from a medical specialist would believe he could make a substantial recovery from his injury and surgery.

Second, Menards argues Simmer was imputed with the knowledge to satisfy the discovery rule prior to June 4, 2012. Menards alleges multiple factors should have alerted Simmer to the need for a reasonable investigation into the potential for the injury to permanently affect his ability to work. However, Simmer's actions throughout his treatment demonstrate that he took reasonable steps to learn the nature and seriousness of his injury. His initial consultations with his physician led to pain treatment that helped him continue working uninhibited, and he was not even notified of his scoliosis. Once he was referred to Dr. Mehbod, he was allowed to return to work without restrictions by following a non-surgical treatment regimen. Even after it was determined that surgery should be performed, there was no indication he would be unable to return to work after his recovery period. A reasonable investigation would have revealed the same knowledge Simmer already obtained from his treating doctors. We are therefore not persuaded that the imputed-knowledge rule undermines the commissioner's determination that the ninety-day notice period began on June 4, 2012.

Menards cites *Swartzendruber* in support of its argument.[5] However, that case is distinguishable. In *Swartzendruber*, the claimant could hardly walk and

---

[5] Menards also cites other cases that are not persuasive. *See Midwest Ambulance Serv. v. Ruud*, 754 N.W.2d 860, 865 (Iowa 2008); *Mercy Med. Ctr. v. Fistler*, No. 08-1784, 2009 WL 1913689, at *2–4 (Iowa Ct. App. July 2, 2009); *Pella Corp. v. Mennenga*, No. 07-1112, 2008 WL 2200095, at *5 (Iowa Ct. App. May 29, 2008). The court in *Ruud*

visited a hospital emergency room, where he was informed his artificial hip was loose and was referred to a surgeon. *Id.* at 651. The claimant was imputed with knowledge of the seriousness of his injury on those facts. *Id.* In this case, Simmer's pain increased slowly over time, and Simmer visited the doctor multiple times at reasonable intervals. He never needed to visit an emergency room, and his specialist, Dr. Mehbod, initially advised *against* surgery.

The determination of the date initiating the ninety-day period via the discovery rule is a case-by-case, fact-intensive determination. *See id.* This record contains substantial evidence that supports the agency's determination: Simmer, acting as a reasonable person and including all knowledge that could imputed to him, discovered the seriousness of his injury on June 4, 2012. He therefore gave timely notice of the injury to his employer, and his claim is not barred by Iowa Code section 85.23.

### B. Causation

Menards asserts, "Because the finding that [Simmer's] condition is related to his work for [Menards] is contrary to substantial evidence in the record, it must be reversed." Menards misapprehends the scope of our review. On appellate review, we merely determine whether there exists in the record substantial

---

noted that inevitable surgery might give a claimant notice of the seriousness of her injury and that the claimant herself was concerned her injury would cause problems for her in her work. *Ruud*, 754 N.W.2d at 865. In the case before us, surgery was not inevitable and was in fact avoided by Dr. Mehbod for two years, and the record shows Simmer did not believe the injury would cause permanent problems for his employment. *Ruud* is distinguishable. We also note the court in *Ruud* determined the facts in that case were insufficient to reverse the agency's findings of fact. *Id.* In both *Fistler* and *Mennenga*, this court affirmed the agency's determinations regarding that dates on which the respective claimants had knowledge of the seriousness of their injuries under the discovery rule. *See Fistler*, 2008 WL 2200095, at *4; *Mennenga*, 2008 WL 2200095, at *5. Nothing in either case supports Menards's position.

evidence supporting the agency's findings. *See Mike Brooks*, 845 N.W.2d at 889.

Dr. Mehbod's statement as to causation clearly indicates his expert opinion that Simmer's work at Menards "aggravated, accelerated or [sped] up the degenerative process in [his] back." The agency determined this expert opinion was the most credible. Indeed, Dr. Mehbod is the only doctor who treated Simmer for a significant period of time. The opinion of Dr. Miller supports that of Dr. Mehbod. These two expert opinions constitute substantial evidence supporting the agency's causation determination.

We need not consider whether the expert opinions of the other doctors contradict those of Dr. Mehbod and Dr. Miller or offer alternative theoretical causes—including Menards's persistent references to Simmer's history as a smoker. Our review explicitly excludes determining "whether the evidence supports a different finding" than that of the agency. *See id.*

## IV. Conclusion

Substantial evidence in the record supports the agency's finding that Simmer discovered the serious and compensable nature of his injury on June 4, 2012. He therefore provided sufficient notice to his employer to permit him to recover. Substantial evidence in the record also supports the agency's finding that Simmer's injury arose out of and in the course of his employment. We affirm.

**AFFIRMED.**