**IN THE COURT OF APPEALS OF IOWA**

No. 15-0323
Filed November 25, 2015


**CARL A. NELSON & COMPANY and
ZURICH NORTH AMERICA INS. CO.,**
         Petitioners-Appellants/Cross-Appellees,

**vs.**

**BYRAN SLOAN,**
         Defendant-Appellee/Cross-Appellants.
_____
         Appeal from the Iowa District Court for Polk County, Douglas F. Staskal,

Judge.


         An employer appeals, and a worker cross-appeals, the district court's

judicial review decision, which affirmed in part and reversed in part the workers'

compensation commissioner's award of benefits.  **DISTRICT COURT DECISION**

**AFFIRMED ON APPEAL; DISTRICT COURT DECISION REVERSED IN PART**

**AND AGENCY DECISION AFFIRMED IN PART AND REVERSED IN PART ON**

**CROSS-APPEAL.**


         Sasha   L.   Monthei   of   Scheldrup   Blades,   Cedar   Rapids,   for

appellants/Cross-appellees.

         Toby J. Gordon of Swanson, Gordon, Benne, Clark & Kozlowski, L.L.L.P.,

Burlington, for appellee/Cross-Appellant.


         Heard by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VOGEL, Presiding Judge.**

Carl A. Nelson & Company and Zurich North American Insurance Co. (the Employer) appeal, and Byran Sloan cross-appeals, the district court's judicial review decision, which affirmed in part and reversed in part the workers' compensation commissioner's award of benefits to Sloan. The Employer claims the district court erred in affirming the agency's causation finding and erred in affirming the agency's misinterpretation and misapplication of the law of intervening causes. In the cross-appeal, Sloan claims the district court erred in modifying the provision of the agency's decision that ordered medical "bills" that had been paid by Sloan's private health insurer be paid directly to Sloan.

We agree with the district court that substantial evidence supports the agency's causation finding, and we likewise find no error in the agency's interpretation or application of the law of intervening causes. With respect to the cross-appeal, we conclude the district court erred in its interpretation of the controlling case law. Therefore, we affirm in part and reverse in part the district court's judicial review decision.

**I. Background Facts and Proceedings.**

At the agency level, the parties stipulated Sloan sustained an injury to his back in the course and scope of his employment on August 15, 2011, while lifting concrete forms out of a trench. Sloan was treated for what was described as a back strain, and he was returned to full-duty work with no restrictions on August

24, 2011.  The dispute in this case centers on what effect an incident that occurred on October 30, 2011,[1] had on that stipulated work injury.

On October 30, 2011, Sloan was assisting a friend move some go-kart frames into a trailer.  When Sloan tried to slide a frame that had been placed on the trailer by a bobcat, he felt a sudden onset of pain and numbness in his back and legs.  Sloan described the pain as being similar to what he experienced when the initial injury occurred.  When conservative treatment for this injury failed, Sloan underwent back surgery and was subsequently released at maximum medical improvement on January 14, 2013.

The workers' compensation case was tried before a deputy commissioner on April 9, 2013.  The deputy heard the testimony of Sloan and his wife, and received the parties' exhibits and briefs.  The deputy denied Sloan's claim after determining the go-kart incident was an intervening and superseding cause of Sloan's injury.  It was the deputy's opinion that "[t]he greater weight of the evidence supports a finding that [Sloan] sustained an injury, returned to baseline and then suffered a new injury assisting a friend."  The deputy further concluded, "There were no competent medical opinions tying [Sloan's] original work injury to his ongoing back problems."

Sloan appealed to the commissioner, who reversed the deputy's conclusion, finding "the greater weight of evidence supports the finding that claimant's work injury was a proximate and natural cause of the disability he suffered from at the time of the arbitration hearing."  The commissioner stated the

---

[1] The record is unclear whether the incident happened on October 29, 2011, or October 30, 2011.  For our purposes we will use the date of October 30.

"chain of causation can only be broken when the claimant's conduct amounts to an intentional violation of an express or implied prohibition and it medically supersedes the claimant's original condition." While the commissioner noted the evidence was "quite compelling" that the go-kart incident substantially worsened or aggravated Sloan's condition, it did not amount to an intervening or superseding cause because Sloan "was simply engaged in an ordinary activity of daily living, namely helping a friend transport items on a trailer he owned" and not engaged in conduct that was "contrary to any express or implied duty owed to his employer following his work injury."

The commissioner also held the Employer is responsible for the medical treatment Sloan received following the go-kart incident. The commissioner noted "the vast majority of the medical bills were unpaid as of the date of the hearing." The Employer was to pay those bills directly to the medical provider. However, those bills that were paid by Sloan's private health insurance "shall be reimbursed directly to [Sloan] as the Iowa Supreme Court has mandated in *Ruud*." *See Midwest Ambulance Serv. v. Ruud*, 754 N.W.2d 860, 867–68 (Iowa 2008).

The Employer filed for judicial review with the district court, who affirmed the agency's causation opinion, finding, "the commissioner's determination is clearly supported by substantial evidence in the record." While the district court noted that the evidence in this case could support the contrary conclusion, as the deputy commissioner found, the court acknowledged its duty was to review the evidence to support the decision made by the agency, not the decision that the agency could have made. The court likewise affirmed the agency's analysis of

the intervening and superseding cause, concluding "there is really no point in the court reiterating that discussion when the court has no disagreement either with the commissioner's judgment regarding the law or his application of the law to the facts." The court agreed substantial evidence supported the agency's conclusion that "Sloan's helping a friend loading and moving go-karts . . . was no more strenuous than his normal work activities."

However, the court modified the agency's decision with respect to the payment of medical bills that had been covered by Sloan's private health insurer. The court determined the agency misinterpreted the supreme court's holding in *Ruud* as mandating direct reimbursement to Sloan. Instead, the district court held the Employer is to

> either (1) directly reimburse Sloan for the expenses approved by the commissioner as part of Sloan's claim that were paid by the health insurer; or (2) reimburse the insurer for such amounts and pay any remaining amounts of any such expenses not paid by the health insurer directly to the provider.

From this ruling the Employer appeals the causation ruling, and Sloan cross-appeals the ruling on the reimbursement of medical expenses paid by his private health insurer.

## II. Scope and Standard of Review.

As our supreme court stated in *Cedar Rapids Community School District v. Pease*, 807 N.W.2d 839, 844–45 (Iowa 2011):

> Our decision is controlled in large part by the deference we afford to decisions of administrative agencies. Medical causation presents a question of fact that is vested in the discretion of the workers' compensation commission. We will therefore only disturb the commissioner's finding of medical causation if it is not supported by substantial evidence.

The Employer also objects to the agency's interpretation of the law and application of the law to the facts with respect to its discussion of intervening and superseding causes. We give no deference to the agency's interpretation of law where, as here, the agency has not been clearly vested by the legislature with the authority to interpret that law. Iowa Code § 17A.19(10)(c), (*l*) (2013); *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256–57 (Iowa 2012); *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 14 (Iowa 2010) ("When a term has an independent legal definition that is not uniquely within the subject matter expertise of the agency, we generally conclude the agency has not been vested with interpretative authority."). We will only disturb the agency's application of law to the fact if that application is "irrational, illogical, or wholly unjustifiable." *Burton*, 813 N.W.2d at 256.

With respect to the claim regarding the reimbursement of medical benefits paid by a private health insurer, Sloan articulates the varying standards of review that are applicable in judicial review proceedings, but he fails to articulate precisely which standard is applicable to the claim he makes on appeal. "Because of the widely varying standards of review, it is 'essential for counsel to search for and pinpoint the precise claim of error on appeal.'" *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010) (citation omitted). We interpret the claim to be one that implicates the agency's interpretation of law, both statutory law and the supreme court's ruling in *Ruud*. Thus, we give no deference to the agency's interpretation as we conclude the agency has not been clearly vested by the legislature with the authority to interpret that law. *See Renda*, 784 N.W.2d at 14.

**III. Causation.**

The question of medical causation is "essentially within the domain of expert testimony." *Pease*, 807 N.W.2d at 845. It is the commissioner, as the trier of fact, who must "weigh the evidence and measure the credibility of witnesses." *Id.* "The determination of whether to accept or reject an expert opinion is within the 'peculiar province' of the commissioner." *Id.* We will disturb the agency's decision on medical causation only if it is not supported by substantial evidence. *Id.*

In this case, the commissioner reviewed the medical opinions on the issue of causation and determined, of the three experts who offered opinions on causation, the opinion of Kenneth Bussey, M.D., was most persuasive. The commissioner concluded the other two causation opinions were based "almost entirely, upon the stated proposition that [Sloan] was not suffering from radicular symptoms between August 15, 2011 and October 30, 2011." Based on his review of the medical records, the commissioner determined that this proposition was not supported by the evidence. The commissioner credited Sloan's testimony that he requested a full-duty release to work on August 24, 2011, not because he was healed but because he could not financially afford to be on light-duty with shorten work hours any longer. The commissioner concluded there was "simply no reasonable basis to disbelieve claimant's uncontroverted, sworn testimony that he was still suffering from back and leg pain (radiculopathy) when he was released" back to work. The commissioner concluded:

> Therefore, the work-related injury either caused the herniated disc or it weakened claimant's discs in his spine so that the second injury caused the final or worsened herniation. In either

event, claimant has met his burden of proof to demonstrate that the disability was a natural consequence of the work injury. The subsequent non-work injury merely completed or furthered the injury which began at work.

It is therefore concluded that for all of these reasons the greater weight of evidence supports the finding that claimant's work injury was a proximate and natural cause of the disability he suffered from at the time of the arbitration hearing.

Giving deference as we must, we, like the district court, conclude substantial evidence supports the commissioner's causation determination. While a different conclusion could be reached based on the evidence presented, that is not the standard of review we must apply in judicial review proceedings. *Burton*, 813 N.W.2d at 256 ("This review is limited to the findings that were actually made by the agency and not other findings that the agency could have made.").

The Employer also challenges the agency's interpretation and application of the law with respect to the question of intervening and superseding causation. The agency cited with approval Larson's treatise on Workers' Compensation Law, which holds, "The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury." 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* ch. 10, § 10.01, at 10-2 to 10-3 (rev. ed. 2015); *see also Oldham v. Scofield & Welch*, 266 N.W. 480, 482 (Iowa 1936) ("In other words, where an accident occurs to an employee in the usual course of his employment, the employer is liable for all consequences that naturally and proximately flow from the accident.").

The commissioner held the go-kart incident was a direct and natural result of the August 15, 2011 work injury based on the opinion of Dr. Bussey. The

commissioner then concluded this connection was not severed by Sloan's activity in attempting to slide the go-kart frame on the trailer because the back was rendered "more vulnerable" by the work injury. *See id.* § 10.06[2], at 10-15. The action of Sloan was not considered "negligent" so as to break the chain of causation because Sloan's actions were not rashly undertaken with knowledge of the risk created by the weakened member. *See id.* § 10.06[3], at 10-17. The commissioner also noted the action taken by Sloan was not "an intentional violation of an express or implied prohibition" by Sloan's treating physician. *See id.* § 10.09[4], at 10-27. Sloan had been released by the Employer's doctor to full duty with no restrictions as of August 24, 2011, and the action Sloan took was not any more physically demanding than the work he had performed for the Employer during the interim two months between his return to work and his subsequent reinjury.

Based on our review of the record and the applicable law, we agree with the district court that the agency did not misinterpret the law with respect to intervening and superseding cause. *See* Iowa Code § 17A.19(10)(c). In addition, we do not find the agency's application of the facts to that law, to be "illogical, irrational or wholly unjustifiable." *See id.* § 17A.19(10)(m).

We therefore affirm the district court's judicial review decision with respect to the Employer's appeal.

## IV. Payment of Medical Expenses.

Sloan cross-appeals the district court's judicial review decision. He claims the court erred when it modified the agency's decision by holding that the Employer can either pay the medical expenses that had been paid by Sloan's

private health insurance to him directly or to his health insurance company. Sloan maintains the supreme court's ruling in *Ruud* mandates the payments must be made to him, not his private health insurance company.

In *Ruud*, the employee sustained an injury and was unable to return to work. 754 N.W.2d at 863. She continued on her employer's group health insurance after she left employment though COBRA and personally paid the required premiums in full. *Id.* The employer was ultimately found responsible for the injury, and the supreme court determined the employer was not entitled to a credit under Iowa code section 85.38(2)[2] for the medical benefits covered by the group health insurer because the employer did not pay any portion of the premium during the time the employee was covered under COBRA. *Id.* at 867

___

[2] Iowa Code § 85.38(2) provides:

    a. In the event the employee with a disability shall receive any benefits, including medical, surgical, or hospital benefits, under any group plan covering nonoccupational disabilities contributed to wholly or partially by the employer, which benefits should not have been paid or payable if any rights of recovery existed under this chapter, chapter 85A, or chapter 85B, then the amounts so paid to the employee from the group plan shall be credited to or against any compensation payments, including medical, surgical, or hospital, made or to be made under this chapter, chapter 85A, or chapter 85B. The amounts so credited shall be deducted from the payments made under these chapters. Any nonoccupational plan shall be reimbursed in the amount deducted. This section shall not apply to payments made under any group plan which would have been payable even though there was an injury under this chapter or an occupational disease under chapter 85A or an occupational hearing loss under chapter 85B. Any employer receiving such credit shall keep the employee safe and harmless from any and all claims or liabilities that may be made against them by reason of having received the payments only to the extent of the credit.
    b. If an employer denies liability under this chapter, chapter 85A, or chapter 85B, for payment for any medical services received or weekly compensation requested by an employee, and the employee is a beneficiary under either an individual or group plan for nonoccupational illness, injury, or disability, the nonoccupational plan shall not deny payment for the medical services received or for benefits under the plan on the basis that the employer's liability under this chapter, chapter 85A, or chapter 85B is unresolved.

("We therefore hold that under Iowa Code section 85.38(2), the employer must contribute in whole or in part to a group insurance plan for the benefit of the claimant in order to be entitled to the statutory credit. Because Midwest and Combined have not proven that they contributed to Ruud's COBRA payments, they cannot prevail on their claim under section 85.38(2)."). The supreme court then went on to address the commissioner's ruling that the employer was to pay Ruud directly for the medical expenses paid by the health insurer on Ruud's behalf. *Id.* at 867–68. The supreme court noted the commissioner had concluded,

> that amounts paid by private insurance are attributable to the plaintiff as if she made those payments herself. The commissioner reasoned that other health insurance plans may have subrogation rights against an insured who receives benefits under workers' compensation. In order to avoid a situation where a health insurance company sought reimbursement from the claimant for expenses that the employer has not paid, the commissioner held that the employer must pay to the claimant an amount equal to the medical benefits that were covered by the insurer.

*Id.* at 868. The supreme court then concluded, "the commissioner has adopted the most sensible approach to this unusual issue." *Id.*

> [A]n employee who pays group health insurance premiums has, in effect, paid for medical expenses covered by the group plan. We therefore hold that the commissioner did not err in ordering direct payment to the claimant for *past medical expenses paid* through insurance coverage obtained by the claimant independent of any employer contribution.

*Id.* (emphasis added).

We find the supreme court's ruling definitive with regard to whom an employer should pay medical expenses that have previously been paid by health insurance coverage to which the employer did not contribute. We disagree with

the district court's assessment that the holding in *Ruud* does not apply in this case. We do not find the supreme court's ruling in *Ruud* distinguishable, as the district court did, because Sloan did not personally pay for the premiums or provide proof his wife paid the premiums—the health insurance at issue in this case was provided through his wife's employer. The dispositive issue in *Ruud* was that the injured worker's employer did not contribute to the plan but the employee secured coverage independent of any employer contribution. *Id.* The same holds true here.

We also disagree with the district court that there could be other ways for these medical expenses to be paid. The supreme court determined "the most sensible approach" was for the employer to pay the injured worker directly, who would then be responsible to the health insurer for any subrogation claim. *Id.* We find the *Ruud* decision controlling, and reverse the district court's ruling to the contrary.

However, we do reverse the agency's decision with respect to the terminology used. While the commissioner stated it was adhering to the *Ruud* decision, it used the terminology "bills which have been paid" rather than the terminology used in *Ruud,* "past medical expenses paid." We therefore reverse the commissioner only to the extent of bringing the language into compliance with the holding in *Ruud.* The Employer is responsible to make direct payment to

Sloan for "*past medical expenses paid* through insurance coverage." *See id.* (emphasis added). The agency's decision is affirmed in all other respects.

**DISTRICT COURT DECISION AFFIRMED ON APPEAL; DISTRICT COURT DECISION REVERSED IN PART AND AGENCY DECISION AFFIRMED IN PART AND REVERSED IN PART ON CROSS-APPEAL.**