# IN THE SUPREME COURT OF IOWA

No. 22–2081

Submitted November 16, 2023—Filed December 22, 2023

**LON TWEETEN** d/b/a **TWEETEN FARMS** and **GRINNELL MUTUAL INSURANCE CO.,**

      Appellants,

vs.

**COREY TWEETEN,**

      Appellee.

---

Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.

An employer and workers' compensation carrier appeal a district court order denying in part their petition for judicial review of an agency order granting workers' compensation benefits to an employee. **REVERSED AND REMANDED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Christopher S. Spencer (argued) and Stephen W. Spencer of Peddicord Wharton, LLP, West Des Moines, for appellant.

Janece M. Valentine (argued) of Valentine Law Office, P.C., Fort Dodge, for appellee.

**OXLEY, Justice.**

An employer and its workers' compensation carrier appeal following an award of benefits to an employee. The appeal raises issues involving three provisions of Iowa Code chapter 85 (2020):

> (1) Does the statutory bar under Iowa Code section 85.35(9) preclude further benefits following a compromise settlement between a claimant and the Second Injury Fund?

> (2) Does the discovery rule toll the statute of limitations following amendments to Iowa Code section 85.26(1)?

> (3) How do amendments to Iowa Code section 85.39(2) affect reimbursement for independent medical examinations?

As explained below, the employee's compromise settlement with the Second Injury Fund does not preclude the employee's claims against his employer, but the statute of limitations does. Because the employee has no compensable injury, he is not entitled to reimbursement for an independent medical examination irrespective of any amendments to section 85.39, so we do not reach the third issue. We reverse the district court's order affirming in part the commissioner's award of benefits and remand for further proceedings.

**I. Background Facts and Proceedings.**

Corey Tweeten worked for his dad, Lon, on the family farm, Tweeten Farms. Corey and Lon were vacuuming grain out of a bin on July 25, 2017, when Corey hurt his right arm. The pain persisted, and Corey sought medical treatment for pain in his right elbow on August 14. He was diagnosed with right lateral epicondylitis (tennis elbow) and advised to take two Aleve per day, ice the elbow, and use a wrist splint to decrease the strain on his elbow. His elbow pain did not subside, and he returned for further medical treatment on January 3, 2018. He was told to continue using over-the-counter pain medicine and ice for his elbow and was referred for physical therapy.

When physical therapy did not help, Corey returned to his local clinic provider on April 13. In addition to the elbow pain, Corey complained for the first time about pain in his shoulder. Corey received a trigger point injection in his right deltoid muscle on May 11 and was scheduled for an MRI. The May 22 MRI of his shoulder revealed nothing abnormal, and another MRI was ordered to scan the distal deltoid in his midarm, which is where Corey's complaints centered. That MRI showed a "significant deltoid insertional tear," which was described as an "unusual injury." Dr. Bryan Warme performed surgery to repair the deltoid tear on June 18. At his October 16 follow-up with Corey, Dr. Warme concluded that Corey had likely overcompensated for the tennis elbow, causing the deltoid tear. Dr. Warme believed both injuries were related to the July 2017 grain bin incident. Lon, Corey's father, had been submitting the medical bills to his health insurance carrier, but he submitted the medical bills related to the surgery to Grinnell Mutual Insurance Company (Grinnell), his workers' compensation carrier for the farm.

Grinnell directed Corey to see Dr. Steven Aviles for an independent medical examination. After his review on August 29, 2018, Dr. Aviles did not think the right lateral elbow pain and the right deltoid injury were caused by the same event. He concluded that the tennis elbow was likely caused by chronic repetitive stress but the distal deltoid avulsion was caused by a traumatic injury, opining that it is not possible for that type of injury to occur from chronic repetitive stress. In a November 12 letter, Dr. Aviles stood by his conclusion that the deltoid tear could not result from a repetitive stress injury and was not work related, disagreeing with Dr. Warme's October 16 conclusion to the contrary.

On January 21, 2020, Corey filed an arbitration petition with the workers' compensation commissioner seeking medical benefits from Tweeten Farms and

Grinnell[1] for an upper right extremity injury, asserting an injury date of February 1, 2018. The petition included a claim against the Second Injury Fund premised on a prior right ankle injury in 2008.

Corey sought an independent medical exam from Dr. Robin Sassman, who agreed with Dr. Warme in a January 16, 2021 report that the deltoid tear related to overcompensating for the tennis elbow and was therefore related to Corey's work injury. Dr. Sassman performed an impairment rating and concluded that Corey's right elbow and right shoulder injuries combined for a 5% upper extremity impairment that converted to a 3% whole person impairment. Dr. Sassman's bill for the examination was $4,650.

An arbitration hearing on the petition for benefits was held before a deputy workers' compensation commissioner on March 10, 2021. The Second Injury Fund filed a notice on February 15 that it had reached a settlement with Corey, which was awaiting approval by the commissioner, and that it would not be attending the upcoming hearing. In its April 13 posthearing brief, Grinnell asserted that the compromise settlement with the Second Injury Fund extinguished all of Corey's claims for workers' compensation benefits pursuant to Iowa Code section 85.35(9), divesting the workers' compensation commissioner of jurisdiction to award him additional benefits. The settlement was approved by the commissioner on April 23.

The deputy found that Corey had right elbow epicondylitis and a deltoid tear arising out of the course of his employment from the July 2017 grain bin incident. The deputy applied the discovery rule to conclude that Corey did not learn of the seriousness of his injury until April 2018, which meant that his January 21, 2020 petition did not run afoul of the two-year statute of limitations

---

[1]Because their interests are aligned, we refer to Grinnell Mutual and Tweeten Farms collectively as "Grinnell" through the remainder of the opinion.

in Iowa Code section 85.26. The deputy awarded temporary total disability and permanency benefits as well as the costs of Dr. Sassman's independent medical examination.

Grinnell filed a motion for reconsideration, noting that the deputy did not address whether the Second Injury Fund compromise settlement divested the commissioner of jurisdiction to award additional benefits. The deputy concluded that the statutory bar in section 85.35(9) went to the commissioner's authority, not his subject matter jurisdiction, and that Grinnell waived the defense by failing to assert it during the hearing or in the hearing report, raising it for the first time in its posthearing brief. Alternatively, the deputy concluded that the statutory bar did not apply because Grinnell was not a party to the compromise settlement between Corey and the Second Injury Fund and those parties had crossed through the preprinted language on the settlement agreement form stating that the settlement barred all future claims for the injury at issue.

Grinnell appealed to the commissioner, and the commissioner affirmed the deputy's arbitration decision. As to the argument that the compromise settlement ended the commissioner's jurisdiction over Corey's claims, the commissioner substituted its analysis, explaining that the statutory bar goes to jurisdiction over the case, not subject matter jurisdiction, and can therefore be waived. Noting the importance of the hearing report to determining the issues to be decided, the commissioner concluded that Grinnell waived the issue by signing the hearing report without including the issue in the report or raising it during the hearing.

Grinnell filed a petition for judicial review. The district court disagreed with the commissioner's jurisdictional analysis of Iowa Code section 85.35(9) but agreed that the compromise settlement did not bar Corey's claims against Grinnell based on amendments to section 85.35(9) limiting its effect to "the subject

matter of the compromise." On the merits of Corey's claim, the district court concluded that the expert reports of Dr. Warme and Dr. Sassman provided substantial evidence to support the commissioner's finding that both the tennis elbow and deltoid tear were causally connected to the July 2017 grain bin incident. The district court disagreed with the commissioner's application of the discovery rule to make Corey's claim for benefits associated with both injuries timely. Relying on a 2017 amendment to Iowa Code section 85.26(1) that expressly defined the "date of occurrence of injury," the district court concluded the discovery rule no longer applied and Corey's claim for disability or medical expenses associated with his tennis elbow—which manifested at the time of the July 2017 incident— were time-barred. But the district court concluded the deltoid tear was a cumulative injury that did not manifest itself until after January 21, 2018—within two years of the date Corey filed his claim. According to the district court, "[n]o case law is needed to infer that knowledge of an injury is a prerequisite for knowledge that the injury was work-related." The district court limited Corey's recovery to compensation for his deltoid tear but not the tennis elbow. Finally, as relevant to the appeal, the district court concluded that substantial evidence supported the commissioner's decision to award reimbursement of the full cost of Dr. Sassman's independent medical evaluation.

Grinnell appealed; Corey did not. As noted at the outset, Grinnell's appeal challenges the district court's application of three statutory provisions: Iowa Code section 85.35 governing compromise settlements, section 85.26 governing the statute of limitations, and section 85.39 governing reimbursement for independent medical examinations. We address each in turn.

**II. Corey's Compromise Settlement with the Second Injury Fund Did Not Bar His Claim for Benefits Against His Employer Under Iowa Code Section 85.35(9).**

Whether the compromise settlement bars Corey's claims for further relief from his employer under chapter 85 depends on section 85.35. Specifically, the parties dispute the significance of the legislative addition of the phrase "regarding the subject matter of the compromise" to section 85.35(9). This is not the type of language that has clearly been vested in the agency to interpret, so we review the agency's decision for correction of errors at law. *See* Iowa Code § 17A.19(10)(*c*) (allowing a court to reverse agency action that prejudices a party's substantial rights "[b]ased upon an erroneous interpretation of a provision of law"); *see also Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 257 (Iowa 2012) (considering whether a term is one the agency needs to interpret to carry out its duties or whether the term has legal significance outside the agency's subject matter expertise).

Like most states, Iowa provides a comprehensive statutory scheme governing injuries suffered on the job. *See Suckow v. NEOWA FS, Inc.*, 445 N.W.2d 776, 778–79 (Iowa 1989) (describing the scheme as representing a compromise whereby "[e]mployees give up their common law rights of actions against employers," and "[i]n return employers give up their common law defenses and must pay employees for all work-related injuries regardless of fault"). The general assembly vested the workers' compensation commissioner with exclusive jurisdiction over claims by injured employees seeking workers' compensation benefits against their employers. *See* Iowa Code § 85.20; *see also Barnes v. State*, 611 N.W.2d 290, 292 (Iowa 2000) (en banc) (recognizing that "[d]emands for lost wages under these circumstances are clearly within the jurisdiction of the commissioner—not the courts," citing Iowa Code section 85.20). The commissioner's jurisdiction flows directly from, and is circumscribed by, the statutory scheme.

In other words, the commissioner's jurisdiction extends only so far as the general assembly provides.

Iowa Code section 85.35 governs settlement of workers' compensation claims. A compromise settlement is one method of settlement and works as a "full and final disposition" of an employee's claim to benefits. Iowa Code § 85.35(3). A compromise settlement approved by the workers' compensation commissioner also "constitute[s] a final bar to any further rights arising under" the Iowa Workers' Compensation Act "regarding the subject matter of the compromise." *Id.* § 85.35(9). Here, Corey entered into a compromise settlement with the Second Injury Fund, and the commissioner approved it. Grinnell argues that once approved, the commissioner lost jurisdiction to award any other benefits Corey might claim under chapter 85, including his claims against his employer (and Grinnell as his employer's carrier). *See United Fire & Cas. Co. v. St. Paul Fire & Marine Ins.*, 677 N.W.2d 755, 761 (Iowa 2004) ("The approval of the compromise special case settlement terminated the workers' compensation commissioner's jurisdiction over any claims arising out of a properly approved compromise special case settlement."). But Grinnell did not raise the settlement as an issue until after the hearing, and much of the parties' dispute and the agency's analysis focused on whether section 85.35 goes to the commissioner's authority, which can be waived, or its subject matter jurisdiction, which cannot. *See Alliant Energy–Interstate Power & Light Co. v. Duckett*, 732 N.W.2d 869, 874 (Iowa 2007) (distinguishing between subject matter jurisdiction, which cannot be waived, and jurisdiction over a particular case, which can be); *Heartland Exp. v. Gardner*, 675 N.W.2d 259, 266 (Iowa 2003) (explaining that the commissioner's "jurisdiction cannot be conferred based on the parties' status alone").

The workers' compensation scheme is statutory, so we begin with the language of the relevant statute. Notably, section 85.35 was significantly amended

in 2005—the next legislative session after we decided *United Fire & Casualty Co. v. St. Paul Fire & Marine Insurance. See* 2005 Iowa Acts ch. 168, § 10 (codified at Iowa Code § 85.35 (2007)). Previously, parties to a contested workers' compensation case with a "bona fide dispute" could "enter into a settlement of any claim arising under [chapter 85] . . . providing for [final] disposition of the claim." Iowa Code § 85.35 (2003). The settlement was not valid until approved by the commissioner, and once approved, the settlement "constitute[d] a final bar to any further rights arising under" chapter 85. *Id.* § 85.35(8). We have previously read the bar in section 85.35 broadly to preclude a party from seeking any rights created by chapter 85 after entering an approved settlement. In *Bankers Standard Insurance v. Stanley*, we held that a compromise settlement precluded an employer from seeking contribution from an employee who subsequently recovered damages from a third party because the employer's rights were governed by chapter 85. 661 N.W.2d 178, 182–83 (Iowa 2003). We reasoned that the "language of section 85.35 contains no limitation on the 'final bar to any further rights' other than the bar applies only to those rights arising under chapters 85, 85A, 85B, 86, and 87." *Id.* at 182 (quoting Iowa Code § 85.35 (2001)). In *United Fire*, we extended that holding to an employer's attempt to directly sue a third party for indemnity. 677 N.W.2d at 760 ("A compromise special case settlement not only precludes the right of the employer and its insurer to be indemnified by the employee when the employee receives funds from a third party, it also precludes the right of the employer and its insurer to pursue any legal right to indemnification against a third party.").

In 2005, the general assembly made significant revisions to section 85.35. *See* 2005 Iowa Acts ch. 168, § 10 (codified at Iowa Code § 85.35 (2007)). It split the section into subsections, recognizing that parties may enter into different types of settlement agreements concerning different claims or parts of a claim.

*See id.*; *see also* Iowa Code § 85.35(2) (2007) (addressing "agreement[s] for settlement"), (3) (addressing compromise settlements), (4) (addressing "a combination of an agreement for settlement and a compromise settlement"), (5) (addressing contingent settlements). All settlements under section 85.35 still require commissioner approval. *See* Iowa Code § 85.35(7). Of import here, the general assembly added a qualifier to the provision governing a compromise settlement's effect on other rights. 2005 Iowa Acts ch. 168, § 10 (codified at Iowa Code § 85.35(8) (2007), now codified as amended at Iowa Code § 85.35(9) (2020)). That provision now states: "[A]n approved compromise settlement shall constitute a final bar to any further rights arising under [chapter 85] *regarding the subject matter of the compromise . . . .*" Iowa Code § 85.35(9) (2020) (emphasis added).

The parties dispute whether this additional language changed the scope of the statutory bar. But what we said in *Bankers Standard*—that the "language of section 85.35 contains no limitation on the 'final bar to any further rights,' " 661 N.W.2d at 182 (quoting Iowa Code § 85.35 (2001))—is no longer true. The statutory bar now extends only to the "subject matter of the compromise." Iowa Code § 85.35(9). This language must be given effect. *See Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 685 (Iowa 2022) ("We generally read legislation in a manner to avoid rendering portions of a statute superfluous or meaningless."); *Rojas v. Pine Ridge Farms, L.L.C.*, 779 N.W.2d 223, 231 (Iowa 2010) ("[We] presume the legislature included all parts of the statute for a purpose, so we will avoid reading the statute in a way that would make any portion of it redundant or irrelevant."). The general rule that we give effect to all language in a statute is even more applicable when the general assembly adds new language to a statute, particularly when the addition follows our interpretation of the same provision. *Cf. Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 317 (Iowa 2013) ("When a statute is amended soon after controversy has arisen as to the meaning of ambiguous terms in an enactment, the

court has reason to believe the legislature intended the amendment to provide clarification of such terms."). Giving effect to the plain language of section 85.35(9), the compromise agreement bars further rights under chapter 85 "regarding the subject matter of the compromise." Iowa Code § 85.35(9).

Whether the compromise settlement bars Corey's claim for benefits from Grinnell depends on whether that claim is premised on rights that fall within the "subject matter of the compromise." Here, it is important to understand what benefits were covered by Corey's compromise agreement with the Second Injury Fund and what benefits he is seeking from Grinnell. Subchapter II of chapter 85, titled the "Second Injury Compensation Act," Iowa Code §§ 85.63–69, provides benefits to employees with certain preexisting disabilities who "become[] permanently disabled by a [subsequent] compensable injury," *Id.* § 85.64(1). The current employer is liable for the "degree of disability" related solely to the subsequent compensable injury, not the preexisting injury. *Id.* After the employer provides benefits for that liability, the Second Injury Fund compensates the employee for the remainder of the resulting permanent disability, with some adjustments. *Id.* § 85.64. Here, Corey and the Second Injury Fund disputed whether the Second Injury Compensation Act applied to a prior ankle injury from 2008, a dispute they settled for $2,500. Corey's claim against Grinnell relates only to his right arm injury following the July 2017 grain bin incident.

With this understanding, we return to the language of section 85.35(9). The commissioner's approval of the compromise agreement "constitute[s] a final bar to any further rights arising under [chapter 85] regarding the subject matter of the compromise." *Id.* § 85.35(9). *Black's Law Dictionary* defines "subject matter" as "[t]he issue presented for consideration; the thing in which a right or duty has been asserted; the thing in dispute." *Subject Matter, Black's Law Dictionary* 1723 (11th ed. 2019). Corey and the Second Injury Fund were the only parties

to the compromise settlement, and they explicitly defined the "subject and nature of the dispute" on the preprinted form as "the applicability of the Second Injury Compensation Act." Even construing the phrase "subject matter" broadly, whether Corey is entitled to benefits from Grinnell for his right-arm injury cannot be said to be "regarding the subject matter of the compromise" where the compromise involved only the dispute over whether Corey's 2008 ankle injury triggered the Second Injury Compensation Act.

Although we give no deference to the commissioner's interpretation of section 85.35, we note that he recently came to the same conclusion. *See Milbrandt v. R.R. Donnelly*, Iowa Workers' Comp. Comm'n No. 20009756.01, 2023 WL 2229576, at *8–14 (Feb. 17, 2023). *Milbrandt v. R.R. Donnelly* involved a similar situation of a claimant entering a compromise settlement with the Second Injury Fund but not her employer. *Id.* at *7. The commission recognized that section 85.35 was amended in 2005, the legislative session following our decision in *United Fire*, which—in his view—was in response to that decision. *Id.* at *9. He also recognized that "[a] claim brought by a claimant against the [Second Injury] Fund is distinct from a claim brought by a claimant against an employer and an insurance carrier," such that the claim against the employer was not "regarding the subject matter of the compromise" within the meaning of the language added to what is now section 85.35(10). *Id.* at *14.

That is not to say that compromise settlements between an employee and the Second Injury Fund will never bar an employee from seeking benefits from his employer. The extent of the bar will depend on the subject matter of the compromise. But where, as here, the subject matter of the dispute concerns whether a preexisting injury triggers the Second Injury Compensation Act, a compromise settlement of that dispute does not bar the separate and distinct claim against the employer for the current injury.

Therefore, Corey's compromise settlement with the Second Injury Fund did not bar his claim against Grinnell for his right arm injuries, and the commissioner properly exercised his jurisdiction to consider that claim.

**III. Corey's Claim for Benefits Against His Employer Was Untimely Under Iowa Code Section 85.26.**

Corey was diagnosed with tennis elbow and a deltoid tear in his right arm. Corey identifies the July 2017 grain bin incident as the work event causing the injuries. Yet Corey did not file a petition for benefits until January 21, 2020, outside the two-year window allowed by Iowa Code section 85.26. Corey relies on the discovery rule, applied by the commissioner, to argue that his claim was nonetheless timely because he did not appreciate the seriousness or the compensable nature of his injuries until after January 2018. Corey's argument turns on the application of section 85.26. The district court concluded that statutory amendments to section 85.26 abrogated the discovery rule applied by the commissioner. We review "whether the district court correctly applied the law in exercising its section 17A.19(8) judicial review function." *Herrera v. IBP, Inc.*, 633 N.W.2d 284, 287 (Iowa 2001) (quoting *Ahrendsen ex rel. Ahrendsen v. Iowa Dep't of Hum. Servs.*, 613 N.W.2d 674, 676 (Iowa 2000) (en banc)). Judicial review of the commissioner's interpretation of section 85.26 is for corrections of error at law. *Coffey v. Mid Seven Transp. Co.*, 831 N.W.2d 81, 89 (Iowa 2013) (concluding "the legislature has not clearly vested the agency with interpretive authority" over section 85.26 and reviewing agency's interpretation for errors at law).

Section 85.26 requires a proceeding for benefits to be "commenced within two years from the date of the occurrence of the injury for which benefits are claimed." Iowa Code § 85.26(1). Prior to 2017, the "date of the occurrence of the injury" was not statutorily defined. Cumulative injuries that develop over time made it difficult to identify an injury date. The date "an injury occurs is important

because it impacts the determination of 'which employer and carrier is at risk, whether notice of injury and claim are within the statutory period, whether statutory amendments were in effect, which wage basis applies, and other important considerations.' " *Herrera*, 633 N.W.2d at 287 (quoting *Thilges v. Snap–on Tools Corp.*, 528 N.W.2d 614, 618 (Iowa 1995)). We developed a cumulative injury rule, what we called a manifestation test, to identify the injury date for a cumulative injury as the date "when the claimant, as a reasonable person, would be plainly aware (1) that he or she suffers from a condition or injury, and (2) that this condition or injury was caused by the claimant's employment." *Id.* at 288.

We also adopted a discovery rule that tolls the period for commencing a proceeding until the employee knows or should recognize that the injury is compensable for purposes of workers' compensation benefits. *See Orr v. Lewis Cent. Sch. Dist.*, 298 N.W.2d 256, 259–61 (Iowa 1980) (en banc) (applying discovery rule to section 85.26 and overruling *Otis v. Parrott*, 8 N.W.2d 708 (Iowa 1943), *overruled by Orr*, 298 N.W.2d 256). In *Otis v. Parrott*, we had held that the statutory language "from the date of the injury *causing such death or disability*" in Iowa Code section 1386, the predecessor to section 85.36, identified the injury as "the causal injury without reference to whether it is compensable or not." 8 N.W.2d at 711 (emphasis added). But in *Orr v. Lewis Central School District*, we concluded that legislative amendments to section 85.26 removing the phrase "causing such death or disability" clarified that the general assembly did not intend to limit "injury" to the causal injury as we had said in *Otis*, but intended the discovery rule to apply so that "injury" could be read to mean compensable injury. *Orr*, 298 N.W.2d at 260–61 ("[T]he amendment removed the language which had been determinative in *Otis* . . . .").

Since *Orr*, we have continued to apply the discovery rule to toll the statute of limitations "until the employee also knows that the physical condition is serious enough to have a permanent adverse impact on the claimant's employment or employability, i.e., the claimant knows or should know the 'nature, seriousness, and probable compensable character' of his injury or condition." *Herrera*, 633 N.W.2d at 287–89 (quoting *Orr*, 298 N.W.2d at 257); *see also Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 854–55 (Iowa 2009) (using the phrase "permanent adverse impact" as a short-hand for the three elements of the discovery rule test: nature, seriousness, and probable compensable character of the injury). Tying the discovery rule to the permanent adverse impact of an injury reflects the fact that not every minor ache that happens on the jobsite triggers workers' compensation benefits. *See Swartzendruber v. Schimmel*, 613 N.W.2d 646, 650 (Iowa 2000) (en banc) (recognizing that the "seriousness component of the discovery rule exists so that 'every minor ache, pain, or symptom' does not begin the statute of limitations" (quoting 2B Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 78.41(e), at 15–279 (1994))).

In 2017, the general assembly added a sentence to section 85.26(1) defining, "[f]or purposes of this section, 'date of the occurrence of the injury.' " 2017 Iowa Acts ch. 23, § 4 (emphasis omitted) (codified at Iowa Code § 85.23 (2018)). Section 85.26(1) now reads:

> An original proceeding for benefits . . . shall not be maintained in any contested case unless the proceeding is commenced within two years from the date of the occurrence of the injury for which benefits are claimed . . . . For the purposes of this section, 'date of the occurrence of the injury' means the date that the employee knew or should have known that the injury was work-related.

Iowa Code § 85.26(1) (emphasis omitted). Grinnell argues that the codification of a definition for "date of the occurrence of the injury" eliminated the discovery rule. Corey counters that the general assembly merely codified the manifestation

rule for cumulative injuries but left alone the discovery rule we had previously applied to workers' compensation claims, so we should continue to apply that rule.

As a common law rule, discovery rules are subject to modification or abrogation by the legislature. *See, e.g.*, *Frideres v. Schiltz*, 540 N.W.2d 261, 267 (Iowa 1995) (en banc) (recognizing that the common law discovery rule was replaced by enactment of a discovery rule in Iowa Code section 614.8A). Thus, whether the discovery rule as we have previously applied it is a good idea or not, we are tasked with construing the words actually used in section 85.26(1). *See State v. Coleman*, 907 N.W.2d 124, 135 (Iowa 2018) ("When the legislature has defined words in a statute—that is, when the legislature has opted to 'act as its own lexicographer'—those definitions bind us." (quoting *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014))). In doing so, "[o]rdinarily, we may not, under the guise of judicial construction, add modifying words to the statute or change its terms." *Schultze v. Landmark Hotel Corp.*, 463 N.W.2d 47, 49 (Iowa 1990).

The general assembly expressly defined the "date of occurrence of the injury," and it did so "[f]or the purposes of this section," i.e., section 85.26. Iowa Code § 85.26(1) (emphasis omitted). Replacing the phrase "date of occurrence of the injury" with the legislative definition, section 85.26(1) requires a proceeding to be "commenced within two years from . . . the date that the employee knew or should have known that the injury was work-related." *Id.* Previously, we had used the discovery rule to determine when the statutory period commenced. *See Herrera*, 633 N.W.2d at 287 (explaining that "the statute of limitations period does not commence until" the discovery rule has been satisfied). But the general assembly tied commencement of the statute of limitations to a specific event, an event it has now expressly defined.

Corey submits that application of the discovery rule is a two-part process under *Herrera, see id.* at 288 ("The preferred analysis is to first determine the date the injury is deemed to have occurred . . . and then to examine whether the statutory period commenced on that date or whether it commenced upon a later date based upon application of the discovery rule."), and this new statutory definition goes only to the first step. Corey's argument is premised on treating the manifestation test and the discovery rule as distinct concepts. As we recognized in *Herrera,* "[t]hese two rules are closely related, . . . [although] they are not the same." *Id.* at 287 (first alteration and omission in original) (quoting *McKeever Custom Cabinets v. Smith,* 379 N.W.2d 368, 372–73 (Iowa 1985)). They are closely related because they both toll the period for commencing the statute of limitations. The manifestation test tolls the period until the employee knows (or should know) that he is injured and that the injury is work-related. They are not the same because the discovery rule tolls the period one step longer—until the employee recognizes (or should recognize) that the injury is compensable.

We have recognized a similar distinction in the application of the discovery rule in the context of medical malpractice claims. *See Rathje v. Mercy Hosp.,* 745 N.W.2d 443, 452, 455–56 (Iowa 2008) (discussing the national development of the discovery rule and noting that the "difficult subissue, however, was how the discovery rule should be applied to the elements of the claim, i.e., whether or not it should be applied to all of the elements"). In 1975, the general assembly enacted Iowa Code section 614.1(9) "as a specific exception to the general statute of limitations for malpractice actions." *Rathje,* 745 N.W.2d at 455; *see also* 1975 Iowa Acts ch. 239, § 26 (codified at Iowa Code § 614.1(9)(*a*) (1977)). Section 614.1(9) included a discovery rule, but "it defined the rule to begin the two-year statute of limitations when the patient 'knew, or through the use of reasonable diligence should have known [of], . . . the injury or death for which damages are

sought in the action.' " *Rathje*, 745 N.W.2d at 455–56 (alteration and omission in original) (quoting Iowa Code § 614.1(9)). This was different than the discovery rule we had previously applied in *Baines v. Blenderman*, 223 N.W.2d 199, 202 (Iowa 1974), *superseded by statute*, 1975 Iowa Acts ch. 239, § 26, which "provided for the cause of action to accrue not only upon the discovery of the injury and its cause, but also the discovery of the negligent conduct." *Rathje*, 745 N.W.2d at 456. As *Rathje v. Mercy Hospital* recognized, the more limited discovery rule codified in section 614.1(9) replaced the broader application we had applied in *Baines*.

Here, the general assembly set the parameters for the discovery rule in section 85.26, requiring proceedings to commence within two years from when the claimant knows or should know an injury is work-related. The general assembly has chosen to limit the discovery rule to knowledge that an injury is work-related, not to knowledge of the compensable nature of the injury as we had previously recognized. Continuing to apply our prior common law discovery rule to further toll the limitation period until the employee is also aware of the permanent adverse impact of an injury would add words to the statute that the general assembly did not—something we cannot do. *See Schultze*, 463 N.W.2d at 49 (rejecting plaintiff's attempt to incorporate broader discovery rule into Iowa Code section 614.1(9), providing that limitations period was triggered by "death," where the requested construction would require "the addition of the word 'wrongful' [and] would be inconsistent with established rules of statutory construction"); *see also Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 672 (Mich. 2007) (concluding "that courts may not employ an extrastatutory discovery rule to toll accrual in avoidance of the plain language of MCL 600.5827"); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) (distinguishing cases involving claims premised on statutes that did not define date of accrual where "section

16.003(b) specifically defines 'accrual' as the date of death" and holding the plain language of the provision excludes application of a discovery rule).

We therefore agree with the district court that the general assembly modified the discovery rule we had previously recognized when it statutorily defined the "date of occurrence of the injury." For purposes of section 85.26, the two-year statutory period begins to run when the employee knows or should know that an injury is work-related, without regard to whether the injury is also serious enough to be compensable. We recognize this is a significant change within the workers' compensation arena. But that arena is entirely statutory, "being both conceived and constructed by legislative action," and we are bound to apply the statutes as enacted by the general assembly. *See Tripp v. Scott Emergency Comm'n Ctr.*, 977 N.W.2d 459, 464 (Iowa 2022).

The district court concluded that Corey's tennis elbow was time-barred because he knew that that injury was work-related when the injury occurred in July 2017. But the district court also concluded that Corey could not have known the deltoid tear was work-related until he knew of that specific injury. Corey's counsel candidly admitted during oral argument that the injuries were not presented to the commissioner as separate or cumulative injuries, and Corey does not attempt to support the district court's distinction between the two injuries on appeal. He argues instead that both injuries stand or fall together on our application of the discovery rule. Having concluded that the discovery rule as we previously applied it did not survive the 2017 revisions to section 85.26(1), we conclude the district court erred in splitting the injuries. Corey knew he had a right-arm injury that was work-related more than two years before he sought benefits, and his claim is therefore barred as untimely. We do not address how the revisions to section 85.26 might apply to a cumulative-type injury.

**IV. Corey is Not Entitled to Reimbursement for Dr. Sassman's Examination Under Iowa Code Section 85.39.**

Finally, Grinnell appeals the award of $4,650 to reimburse Corey for the independent medical evaluation by Dr. Sassman under Iowa Code section 85.39, arguing that recent revisions to that provision limit the fee to the reasonable cost for an impairment rating. *See* Iowa Code § 85.39(2) ("A determination of the reasonableness of a fee for an examination made pursuant to this subsection, shall be based on the typical fee charged by a medical provider to perform an impairment rating in the local area where the examination is conducted."). However, "[a]n employer is not liable for the cost of such an examination if the injury for which the employee is being examined is determined not to be a compensable injury." *Id.* Because Corey's petition was untimely, the injury for which Dr. Sassman provided the exam was not compensable, and he is not entitled to reimbursement in any event. We therefore reverse the reimbursement award without addressing Grinnell's statutory argument.

**V. Conclusion.**

The district court's judgment granting in part and denying in part Grinnell's petition for judicial review is reversed, and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**